577 P.2d 440

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Marcella GUTIERREZ,**
**Defendant-Appellant.**

**No. 3016.**

Court of Appeals of New Mexico.

March 7, 1978.

William D. Teel, Acting Chief Public Defender, Douglas A. Barr, Asst. Appellate Defender, Roger Bargas (Trial Atty.), Dist. Public Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Roderick A. Dorr, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted of trafficking heroin in violation of § 54–11–20(B)(1), N.M.S.A.1953 (Repl. Vol. 8, pt. 2, 1975 Supp.). She appeals. We affirm.

This appeal arises out of a pre-trial motion to suppress the evidence. A hearing was held and the motion was denied.

On March 10, 1976, a search warrant was served on Marcella Gutierrez while she was visiting a prisoner at the state penitentiary. Four one-gram balloons of heroin were found on her person.

Following defendant's arrest the state police agent obtained another warrant to permit search of defendant's residence. The police with the warrant reached her home a few minutes before defendant who, according to plan, was being transported there in the custody of an officer. The state agent had been told by Ms. Gutierrez that the only person at home was defendant's son, though defendant had not said how old the child was. Before Ms. Gutierrez arrived the state agent knocked and announced himself; when no one answered, he forced the lock and entered. The police then waited for defendant to arrive before searching the premises in her presence. Additional heroin and paraphernalia for its use were discovered in the house.

The search warrants were signed by a district judge. The affidavits were signed by a police officer and the pertinent part of the initial affidavit reads as follows:

A RELIABLE INFORMANT ADVISED ME ON MARCH 9, 1976, AND THE 10TH THAT MARCELLA GUTIERREZ * * * STATED IN THE PRESENCE OF THIS INFORMANT THAT SHE INTENDED TO SMUGGLE HEROIN INTO THE PENITENTIARY OF NEW MEXICO, TO EDWARD L. SANDOVAL . . . DURING A REGULAR VISIT ON MARCH 10TH. *THIS INFORMANT HAS GIVEN RELIABLE INFORMATION IN THE PAST 18 MONTHS WHICH WAS [sic] RESULTED IN OVER 20 ARRESTS AND 5 FELONIES* [sic] *CONVICTIONS TOGETHER WITH THE SEIZURE OF VARIOUS CONTROLLED SUBSTANCES AS CONTRABAND.* [Emphasis added.]

At the hearing, the district judge testified that he swore the officer as to the truth of the matter stated in the affidavits and then read the contents carefully. The judge was aware of the fact that the warrants were sought upon the information of an informant, and based upon the totality of the facts stated, the judge believed that the informant was reliable and that probable cause existed. He then signed the search warrants presented to him. The affiant police officer testified that he was present on ten occasions at which time the informant gave information on prior arrests. On other occasions, the informant gave information to other police officers with whom he worked. Of the ten cases referred to, all occurred within 18 months of the date of the search warrant.

To protect the informant, the trial court disallowed testimony as to the informant's knowledge of convictions obtained against persons trafficking in narcotics. The police officer was ordered to place in a sealed envelope the names and style of cases in which convictions were obtained. The sealed envelope was placed in the office of the clerk of the district court to be sent to this Court in the event of an appeal. The sealed envelope, on request, was presented to this Court. The contents of the sealed envelope contained 15 arrests and 5 convictions, one of which was that of defendant. On September 22, 1975, she was sentenced 10 to 50 years, and the sentence was suspended. On April 1, 1976, some 5½ months after the prior conviction, the present indictment was filed.

The issues on appeal raised by defendant are that: (1) the initial search warrant was legally insufficient on its face alone; (2) the court erred in not permitting defendant to challenge the truth of the facts relied on in the affidavits as to probable cause; and (3) the search of defendant's residence was illegal.

### A. *The search warrants were legally sufficient on their face.*

The first issue is whether the affidavits presented to the district judge conveyed sufficient information from which the hearing judge could determine that the informant was reliable in order to establish probable cause.

The standard that governs is stated in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).

[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was "credible" or his information "reliable."

This rule is stated in different terminology in Rule 17(a) and (f) of the Rules of Criminal Procedure that govern search warrants [Section 41–23–17(a), (f), N.M.S.A. 1953 (2d Repl. Vol. 6, 1975 Supp.).] These subsections provide that "A search warrant shall issue only on a sworn written statement of the facts showing probable cause for issuing the warrant," and " 'probable cause' shall be based upon substantial evidence, which may be hearsay in whole or in part, *provided there is a substantial basis for believing the source* of the hearsay to be credible *and for believing that there is a factual basis* for the information furnished." [Emphasis added.]

The issue of probable cause for finding an informant reliable is one of first impression in New Mexico. Though *Hudson v. State,* 89 N.M. 759, 557 P.2d 1108 (1976) addressed the first prong of the *Aguilar* test in determining that sufficient underlying circumstances had been shown to support the reliability of the facts, the State, in *Hudson,* did not preserve the question of the second *Aguilar* requirement for review.

Defendant argues that the district judge "signed the search warrant *without making any independent determination whether the informant was reliable.*" This statement was emphasized based upon the *Aguilar* test. Defendant misread the *Aguilar* test as well as Rule 17. There is no requirement that a magistrate make an "independent investigation" to determine whether an informant is reliable. Simply stated, the magistrate, from the verified facts presented to him, must believe that the source is credible and that a factual basis exists for the information furnished.

The belief of the district judge that probable cause existed for the issuance of the search warrant was established by the affidavit of the police officer.

When defendant claims that the *Aguilar* standard of probable cause has not been met, the challenge is to the facial sufficiency of the statements of the affidavit not to the truthfulness of the facts. See *Wangrow v. United States,* 399 F.2d 106 (8th Cir. 1968); *Aguilar,* supra. *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Dumbra v. United States,* 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032 (1925).

The search warrants on their face were legally sufficient.

### B. *The court did not err in disallowing a challenge to the truth of the facts.*

The defendant challenged the veracity of the police officer's affidavit on two levels:

(1) The truth of the officer's statements; and

(2) The reliability of the informant with reference to the twenty arrests and five convictions asserted.

In opposition the State argued in its brief "That the overwhelming majority of jurisdictions support the view that the matters in the affidavit on which the search warrant is based may not be questioned by the person against whom the warrant is directed." Annot., 5 A.L.R.2d 394 (1949) and later case service. New Mexico has not yet determined when an attack may be made on matters stated in an affidavit to support a search warrant. Though the question was not decided, it has been suggested that an inquiry behind the face of an affidavit

would be permissible if defendant claims that the officer who signed the statement had committed perjury. *State v. Baca*, 84 N.M. 513, 505 P.2d 856 (Ct.App.1973).

The above A.L.R. Annotation relied on by the State is applicable only in the absence of statute or rule by the court. Rule 18(a) and (d) of the Rules of Criminal Procedure, § 41–23–18(a), (d), N.M.S.A.1953 (2d Repl. Vol. 6, 1975 Supp.) allow a hearing on the matter of a search warrant. It reads:

(a) PROPERTY. A person aggrieved by a search and seizure may move for the return of the property and to suppress its use as evidence.

\* \* \* \* \* \*

(d) HEARING. *The court shall receive evidence on any issue of fact necessary to the decision of the motion. If a motion pursuant to* paragraph (a) *is granted, the property shall be returned, unless otherwise subject to lawful detention.* [Emphasis added.]

The application of Rule 18(d) has not yet been determined in New Mexico, though it is akin to the *former* Rule 41(e) of the Federal Rules of Criminal Procedure, which has been extensively construed. The former Rule 41(e) provided that:

The judge shall receive evidence on any issue of fact necessary to the decision of the motion.

"Under decisions from the courts of appeal of several circuits, the defendant is entitled to a hearing to attack the veracity of governmental allegations in facially valid affidavits underlying search and arrest warrants." 8A Moore's Federal Practice, Rules of Criminal Procedure 41–150 (2d Ed. 1977). *United States v. Scott*, 555 F.2d 522 (5th Cir. 1977); *United States v. Luna*, 525 F.2d 4 (6th Cir. 1975); *United States v. Armocida*, 515 F.2d 29 (3rd Cir. 1975); *United States v. Harris*, 501 F.2d 1 (9th Cir. 1974); *United States v. Marihart*, 492 F.2d 897 (8th Cir. 1974); *United States v. Carmichael*, 489 F.2d 983 (7th Cir. 1973).

State courts have also followed this rule. *State v. Spero*, 116 N.H. 744, 371 A.2d 1155 (1977); *State v. Luciow*, 240 N.W.2d 833 (Minn.1976); *State v. Raboy*, 24 Ariz.App. 586, 540 P.2d 712 (1975); *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973); *People v. Alfinito*, 16 N.Y.2d 181, 264 N.Y.S.2d 243, 211 N.E.2d 644 (1965).

Writers on the subject have uniformly pointed to the necessity of allowing an attack on the veracity of an affidavit facially sufficient to establish probable cause. See, *Warrants for Arrest or Search; Impeaching the Allegations of a Facially Sufficient Affidavit*, 36 Ohio St.L.J. 721 (1975); Forkosh, *The Constitutional Right to Challenge the Content of Affidavits in Warrants Issued Under the Fourth Amendment*, 34 Ohio St. L.J. 297 (1973); Kipperman, *Inaccurate Search Warrant Affidavits As A Ground for Suppressing Evidence*, 84 Harvard L.Rev. 825 (1971); Schlichter, *The Outwardly Sufficient Search Warrant Affidavit: What if it's False?*, 19 U.C.L.A.L.Rev. 96 (1971); Mascolo, *Impeaching the Credibility of Affidavits for Search Warrants: Piercing the Presumption of Validity*, 44 Conn.B.J. 9 (1970); Note, *Testing the Factual Basis for a Search Warrant*, 67 Col.L. Rev. 1529 (1967); Odza, *Criminal Procedure: Search and Seizure: Right To Challenge Truthfulness of Affidavit for Warrant: Burden of Proof*, 51 Cornell L.Q. 822 (1966).

We hold that at a hearing on motion to suppress the evidence, a defendant has the right to challenge the veracity of the statements made in an affidavit underlying a search warrant. A rule generally acceptable was stated in *Carmichael* as follows:

We now hold that the defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an *initial showing* of either of the following: (1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material.
[Authorities omitted.]

However, *once such a hearing is granted,* more must be shown to suppress the evidence. Evidence should not be sup-

pressed unless the trial court finds that the government agent was *either recklessly or intentionally untruthful.* [Emphasis added.] [489 F.2d 988.]

*Carmichael* has been severely criticized by Professor Herman in 36 Ohio State L.J. 721, 746, et seq., supra. *Carmichael's* position is that an innocent misrepresentation should not result in the exclusion of evidence regardless of its effect upon probable cause. Although the author's contention may have merit, it is not applicable in the instant case.

The officer swore in his affidavit that the informant gave reliable information that resulted in over 20 arrests and 5 felonies. The district judge who issued the warrant testified at the hearing on the motion to suppress that he would have found that the informant was reliable even if the affidavit had shown a lesser number of arrests. The fact that the officer had been given information leading to 10 arrests rather than 20 as stated in the affidavit was an error which, when corrected, did not leave the affidavit without facts from which the district judge could conclude that the informant was credible. Therefore, the misrepresentations were immaterial to the finding of probable cause. Being immaterial, the officer's mistake did not affect the issuance of the warrant and there is no basis for suppressing the evidence. *United States v. Carmichael*, supra.

■ We note, in passing, that to establish a record of reliability of an informant sufficient for probable cause, it is unnecessary for the affidavit to state that the informer's past tips had to result in conviction. *State v. Austria*, 55 Hawaii 565, 524 P.2d 290 (1974); *State v. Moehlis*, 250 N.W.2d 42 (Iowa, 1977).

Defendant's challenge as to the veracity of the affidavit failed to show that the affiant acted in bad faith or that he made any misrepresentations to the district judge in securing the warrant. *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

The question implicit in defendant's challenge to the veracity of an informant is: In a hearing on motion to suppress the evidence, what evidence must be disclosed to test the credibility of an informant?

Defendant claims that the trial court erred by not allowing defendant to obtain more information than was in the affidavit, to-wit, the list of names and dates of people arrested and convicted, in order to challenge the reliability of the informant, not the identity of the informant. As in other areas of criminal procedure, a balance needs to be struck between "the public interest in protecting the flow of information against the individual's right to prepare his defense." *McCray v. Illinois*, 386 U.S. 300, 310, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967).

To protect the informant's identity, as permitted in *McCray v. Illinois*, supra, the trial court did not require the affiant-police officer to disclose detailed information conveyed to the police by the informant. In lieu of requiring a public disclosure of the pertinent cases, the trial judge ordered the police officer to place and to seal in an envelope the names and style of cases in which convictions were obtained. The trial court without reading the list, ordered the sealed envelope transmitted to this Court for use in the event of an appeal.

■ Defendant relies on the case of *Commonwealth v. Hall*, supra, to support the contention that the trial court erred in not permitting defendant's requested inquiry. In *Hall*, the Supreme Court of Pennsylvania determined that the only existing method to effectively probe the veracity of the informant's lack of reliability was to allow a defendant meaningful cross examination of the police officer-affiant at the suppression hearing. We need not make that same determination here because the testimony of the affiant-police officer, both on direct and cross examination, was sufficient to demonstrate the credibility of the informant. Granted, the better approach for the trial court would have been to order the police officer to submit the list directly to the trial court. The district judge should

then have made an *in camera* inspection (i. e., only the judge would review the list), thereafter making a finding concerning the informant's reliability. If the judge were to decide that the informant was not reliable he could then invoke Rule 510(c)(2) of the New Mexico Rules of Evidence. [§ 20–4–510, N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.)] It reads in pertinent part as follows:

> If it appears from the evidence in the case or from other showing by a party that an informer will be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of the issue of guilt or innocence in a criminal case \* \* and the state or subdivision thereof invokes the privilege, the judge shall give the state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. \* \* \* If the judge finds that there is a reasonable probability that the informer can give the testimony, and the state or subdivision thereof elects not to disclose his identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on his own motion. \* \* \*

■ Though the sealed envelope procedure was error on the part of the trial court, it was harmless error in that it did not prejudice defendant's rights. *State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App. 1972); *State v. Ranne*, 80 N.M. 188, 453 P.2d 209 (Ct.App.1969); *State v. Vasquez*, 83 N.M. 388, 492 P.2d 1005 (Ct.App.1971). The information in the sealed envelope discloses that, if an *in camera* proceeding had been held, and the defendant allowed to cross examine the police officer, the police officer's testimony would have proved that the informant was reliable.

To have permitted an *in camera* cross examination of the officer by defendant's attorney would have severely jeopardized the secrecy of informant's identity. This situation could have thrown defendant's counsel into a conflict between his duty to his client and his duty as an officer of the court. Certainly the court could order counsel not to disclose the information learned from the *in camera* proceedings. The Code of Professional Responsibility, Canon 7, however, commands an attorney to represent his client zealously within the bounds of the law and a dedicated attorney could read this to mean that he had a duty to convey the information he learned about the informant to his client, the defendant, with the hopes of discovering additional clues for his client's defense. See Freedman, *Where the Bodies are Buried: The Adversary System and the Obligation of Confidentiality*, 10 Crim.L.Bull. 979 (1974); Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 Mich.L.Rev. 1469 (1966).

■ There is the additional problem of whether cross examination can be effective without the defendant present to aid the attorney in questioning the witness. For these reasons we believe that an *in camera* examination by a judge is a better procedure than *in camera* cross examination by defendant's attorney.

We conclude that the trial court did not err in disallowing a challenge to the truth of the facts at the hearing on motion to suppress the evidence.

### C. *The search warrant of the home of defendant was validly executed.*

Defendant attacks the search warrant that allowed the police to search the home of defendant on two grounds: (1) The search of defendant's home was tainted because of the alleged illegality of the first search on the person of the defendant. This claim has been shown to be without merit. (2) The entry was illegally made. We disagree.

■ Defendant argues that "exigent circumstances did not exist prior to the forced entry" and defendant relies on "exigent circumstances" cases. *State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975);

*State v. Baca*, 87 N.M. 12, 528 P.2d 656 (Ct.App.1974); *State v. Anaya*, 89 N.M. 302, 551 P.2d 992 (1976). These cases stand for the proposition that an officer, prior to forcible entry must give notice of authority and purpose, and be denied admittance or have a good faith belief that exigent circumstances exist requiring immediate unannounced entry. The examples of exigent circumstances given in the cases cited are a good faith belief on the officer's part that a person within the premises is in bodily harm or is attempting to destroy evidence or to flee.

The case at hand does not involve the issue of exigent circumstances—here the police officers lawfully entered an unoccupied house for the purpose of executing a valid search warrant. The officers gave notice of authority and purpose to determine if any one other than the defendant was present in the house. Admittance was not denied because the house was unoccupied. The police officers were not compelled to sit and await the arrival and entrance of the defendant. They knew that the house was empty. Under those circumstances, the police officer, armed with a search warrant, had a right to enter the house by force if the door was locked.

In the federal courts, the rule is uniform that a search warrant can be executed in the absence of the possessor or occupant of the property searched. *United States v. Gervato*, 474 F.2d 40 (3rd Cir. 1973); *Payne v. United States*, 508 F.2d 1391 (5th Cir. 1975); *United States v. Agrusa*, 541 F.2d 690 (8th Cir. 1976). *Gervato* recited the history of the Fourth Amendment to the United States Constitution. It noted that none of the cases contemporaneous with and giving rise to the principles of the Fourth even intimated that this amendment was addressed to prohibiting searches of unoccupied premises under a valid warrant. The court went on to say that:

> In light of this history, it is significant to note that neither the Supreme Court nor any court of appeals has even hinted or suggested, despite many opportunities to do so, that a search warrant should be executed only in the presence of the possessor or occupant of the property searched. [474 F.2d at 43.]

In addition, the court interpreted Rule 41(d) of the Federal Rules of Criminal Procedure to signify that the Supreme Court, in promulgating Rule 41(d), did not believe the Fourth Amendment to require the occupant or possessor of property to be present during a search or seizure. Rule 41(d) provides in part that an inventory "shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, *if they are present* * * *." [Emphasis added.]

Similarly, Rule 17(d) of the New Mexico Rules of Criminal Procedure provides in pertinent part:

> The officer seizing property under the warrant shall give to the person from whom *or from whose premises the property was taken* a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt *at the place from which the property was taken.* [Emphasis added.]

This rule, like the one relied on in *Gervato*, also differentiates between giving and leaving a warrant. If the occupant or owner is present during the search the officer shall personally hand the receipt to him. But if the occupant or owner is absent during the search, the officer shall leave the receipt at the location of the search and seizure. Rule 17(d) even more than Rule 41(d) shows that the Fourth Amendment does not require the presence of the person from whose premises the property is taken.

In the state courts, the rule is uniform that an officer armed with a search warrant that authorizes the search of a house is well within his rights to enter by force if no one is present in the house of whom he may demand entrance. See *Thigpen v. State*, 51 Okl.Cr. 28, 299 P. 230 (1931); *Collins v. State*, 184 Tenn. 356, 199 S.W.2d 96 (1947); *Goodman v. State*, 178 Md. 1, 11 A.2d 635 (1940); *People v. Johnson*, 231 N.Y.S.2d 689 (Misc.1962); *People v. Law*, 55 Misc.2d 1075, 287 N.Y.S.2d 565 (1968); *Hart v. Superior Court, County of San Mateo*, 21 Cal.App.3d

496, 98 Cal.Rptr. 565 (1971); *State v. Robinson*, 354 Mo. 74, 188 S.W.2d 664 (1945); *Outlaw v. State*, 208 Miss. 13, 43 So.2d 661 (1949); 1 Varon, *Searches, Seizures and Immunities*, 380 (1961); 79 C.J.S. *Searches and Seizures* § 83f (1952); 68 Am.Jur.2d, § 91 (1973).

We do not want to leave the impression that the home is not sacred; that it is subject to unlawful intrusion by police officers. But a person who violates the law and absents himself from the home cannot escape a lawful search and prevent seizure of property by silently leaving the home with knowledge that police officers are approaching in order to avoid service of warrants upon him and prevent seizure of the property. Possession of narcotics has become so common that enforcement officers are at their wits' end to suppress it. When a court is presented with sufficient, reliable facts stated in an affidavit, it cannot denude itself of the meaning of matters of such common knowledge. When the court arms a police officer with a valid warrant, he has the right to enter with force the vacant premises stated in the warrant.

The search warrant for the house of defendant was validly executed.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.