1999-NMCA-128

990 P.2d 224

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Linda FERNANDEZ, Defendant–Appellee.**

**No. 19,681.**

Court of Appeals of New Mexico.

Aug. 24, 1999.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Appellant.

Gary D. Alsup, Clayton, for Appellee.

*OPINION*

SUTIN, Judge.

{1} The State appeals the district court's suppression of evidence based on a misleading search warrant affidavit. Defendant contends that the appeal is not timely. The first question this appeal resolves is how to compute the ten-day period for a State appeal from an order granting a motion to suppress.

We then look at the standard to be applied when a defendant attacks a search warrant affidavit on the grounds that it contains false statements or omits material facts. We hold that the State's appeal was timely filed, and we reverse because the district court applied the wrong legal standard for evaluating a facially sufficient search warrant affidavit attacked as misleading. We remand for a new suppression hearing.

**FACTS AND PROCEEDINGS**

{2}  While investigating an alleged battery, Officer James Lobb went to Defendant's home on two occasions. On both occasions, Defendant's daughter opened the door, and the officer believed that he smelled burning marijuana. The officer believed the odor to be stronger the second time than the first.

{3}  The officer then prepared an affidavit for a search warrant stating that he suspected marijuana and paraphernalia for using marijuana were concealed at Defendant's residence. Based on this affidavit, the magistrate judge issued a search warrant for Defendant's residence. The warrant was served on Defendant at her home and the search produced various drugs and drug-related paraphernalia. Defendant was arrested and charged with possession of drug paraphernalia, possession of marijuana with intent to distribute, and contributing to the delinquency of a minor.

{4}  Defendant filed a motion to suppress evidence and obtained an evidentiary hearing. Defendant argued that the officer did not have sufficient training and experience smelling marijuana to establish probable cause for the issuance of a search warrant.

{5}  The officer's affidavit explained that:
In the course of my training and career I have had several occasions to smell lighted and burning marijuana.
I have learned from training and experience that marijuana, in order to be burned and ingested is most commonly done so by hand rolled cigarettes or various types of pipes.
I have also learned through training and work-related experience that persons who use and distribute marijuana often keep on hand devices for cleaning, packaging and weighing the marijuana prior to its ingestion.

During the suppression hearing, the officer testified that he never received any courses or formal training at the Police Academy or at the police station in the detection of marijuana. He testified that his "on-the-job training" in the detection of marijuana, meant only training "in connection with cases" that he worked. During the preliminary hearing, the officer had testified to four cases involving marijuana with which he was associated. At the suppression hearing, he testified to having remembered one other case that involved marijuana. None of these cases involved the smell of burning marijuana. During cross-examination at the suppression hearing, the officer testified that he had encountered marijuana smoke in his private life twice, once in 1978, and then again sometime during 1986–1988.

{6}  The district court granted Defendant's motion to suppress on the ground that the officer's affidavit was misleading. The court thought that the magistrate might have reached a different conclusion as to probable cause if the officer had revealed "the limit and limitation of his training and experience" with smelling marijuana.

{7}  The State moved the court to reconsider. On reconsideration, the court found that the officer's affidavit contained intentional misrepresentations and denied the State's motion for reconsideration in a suppression order. The State filed a notice of appeal, and Defendant moved to dismiss the State's appeal on the ground that the appeal was untimely. We deferred consideration of the motion until our decision on the merits.

{8}  We hold that the State's appeal was timely. We reverse on the merits.

**DISCUSSION**

I.  *The State's Appeal Was Timely*

█  {9}  The State appealed on June 3, 1998, from the district court's suppression order filed on May 21, 1998. The notice of appeal was filed on the thirteenth consecutive day after the filing of the court's suppression order. The issue before us is whether the notice of appeal was filed by the State within the ten-day deadline for appeals

by the State from orders suppressing evidence. *See* NMSA 1978, § 39–3–3(B)(2) (1972) ("an appeal may be taken by the state ... within ten days from ... [an] order of a district court suppressing ... evidence ... if the district attorney certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding"). The question is how we calculate those ten days.

{10} The Supreme Court rule that governs the computation of time is Rule 12–308 NMRA 1999. This rule applies the "less-than-eleven-days" rule: "When the period of time prescribed or allowed is less than eleven (11) days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." Rule 12–308(A).

{11} The State contends that, employing the less-than-eleven-days rule in Rule 12–308, it had fourteen consecutive days within which to file, and its thirteenth-day filing was therefore timely.

{12} As Defendant sees it, the plain meaning of ten days is ten consecutive twenty-four hour periods. Defendant contends that *State v. Alvarez*, 113 N.M. 82, 823 P.2d 324 (Ct.App.1991) controls here. Defendant cites no authority other than *Alvarez* for his position. We do not see this issue as governed by *Alvarez*.

{13} In *Alvarez*, the State filed its notice of appeal fourteen days after entry of the district court's suppression order. The Court questioned whether the ten-day period in Section 39–3–3(B)(2) required dismissal of the appeal. The State contended that the appeal was timely because Rule 12–201(A) NMRA 1999 allowed the State thirty days within which to file the notice of appeal. The State argued that the rule, and not the statute, controlled. *See Alvarez*, 113 N.M. at 84, 823 P.2d at 326. Therefore, the State argued, the Court was bound by the Supreme Court's thirty-day period in Rule 12–201(A), even though it conflicted with the ten-day period imposed by the Legislature in Section 39–3–3(B)(2). *See Alvarez*, 113 N.M. at 84, 823 P.2d at 326.

{14} We determined in *Alvarez* that the State's appeal was not timely, and dismissed the appeal, holding that, as between the ten-day period in the statute and the thirty-day period in the rule, the statutory ten-day period controlled. *Id.* at 85, 823 P.2d at 327.

{15} All that *Alvarez* tells us, for purposes of this case, is that the State cannot appeal from a suppression order except pursuant to Section 39–3–3(B)(2); that is, the appeal must be filed within ten days of the filing of the suppression order. *Alvarez* neither addressed nor decided how time was to be computed or whether the rule or the statute should be applied in computing time. We address the time computation issue in this appeal.

{16} We first note that no statute governs the time computation here. Former Section 12–2–2(G) (stating the "Sunday rule" of time computation under statutes) was repealed in 1997, before the suppression order in the present case was entered. *See* 1973 N.M. Laws, ch. 138, § 1 (formerly codified in NMSA 1978, § 12–2–2, repealed 1997). The repeal of Section 12–2–2 was followed by the enactment in 1997 of the Uniform Statute and Rule Construction Act. *See* NMSA 1978, §§ 12–2A–1 to –20 (1997). Section 12–2A–7(E) of this Uniform Act provides the same time computation guideline as Rule 12–308(A) for the less-than-eleven-days rule, but the Uniform Act is not applicable to Section 39–3–3(B)(2) as it currently exists because the Uniform Act applies only to statutes enacted after its effective date. *See* § 12–2A–1(B).

{17} We determine that Rule 12–308 governs the computation of the ten-day period under Section 39–3–3(B)(2). The method of computing a legislatively prescribed appeal time is a matter of procedure over which our Supreme Court "possesses unquestioned power." *State v. Arnold*, 51 N.M. 311, 313–14, 183 P.2d 845, 846–47 (1947). Thus, we hold that the method to be applied here to count the ten-day period is governed by rule, namely, Rule 12–308.

{18} Applying the methodology of Rule 12–308, the computation is as follows: The period of time within which to file an appeal from a suppression order is ten days, which

is less than an eleven-day period of time. Under the methodology of Rule 12–308(A), we exclude intermediate Saturdays, Sundays, and legal holidays. The suppression order was entered on May 21, 1998, and the notice of appeal was filed on June 3, 1998. If we exclude the two intermediate Saturdays, two intermediate Sundays, and one legal holiday, between May 21 and June 3, the days to be counted to arrive at ten are May 22, May 26–29, and June 1–5. The State had until June 5 within which to file its notice of appeal. It filed the notice on June 3. The notice was timely filed.

## II. *The Court Applied an Overruled Legal Standard*

■ {19} The district court suppressed the drugs and drug paraphernalia because of the intentional misrepresentations of the officer in his search warrant affidavit. The State contends that the district court applied erroneous law in suppressing the evidence, in that the district court relied on law that this Court has stated was "not to be followed." Specifically, the State argues that the district court relied on *State v. Gutierrez*, 91 N.M. 542, 577 P.2d 440 (Ct.App.1978), when a later case, *State v. Cervantes*, 92 N.M. 643, 593 P.2d 478 (Ct.App.1979), held that *Gutierrez* was not to be followed.

{20} We first discuss relevant portions of the record in order to set the stage for our discussion of the law. We then analyze the law and conclude by reversing the suppression order.

{21} Defendant argues that in considering the propriety of the search warrant we must read the affidavit without the many statements that Defendant contends should be stricken because of the officer's misstatements and omissions. The officer's affidavit is set out in the Appendix to this Opinion, with the portions Defendant objects to underlined. Defendant argues that, with this language stricken, no probable cause existed for issuance of the search warrant, and he asks us to affirm the district court's suppression order based on the misstatements in and the omissions from the officer's affidavit.

{22} Through cross-examination at the hearing, Defendant showed that the officer actually had no training or experience *as a police officer* in the detection of burning marijuana. The officer testified that: (1) when attending the police academy, he had no courses or training in the detection of burning marijuana; (2) while at the police station in Clayton, he had no courses or training in connection with the detection of burning marijuana; and (3) other than in the four or five cases he had worked on and investigated, he had no formal training or schooling as a police officer with the detection of burning marijuana. The officer's only experience as a police officer with marijuana consisted of stops or arrests in which he was involved. When asked about each of the stops or arrests, he testified that, in each, he did not smell burning marijuana.

{23} Under questioning by the State, the officer testified that on one occasion in 1978, when he was ten years old he smelled burning marijuana. The officer also testified that approximately ten years before the hearing he smelled burning marijuana when he and fellow National Guard members were traveling to attend a drill, and one of the guardsman lit a pipe containing marijuana.

{24} At the close of the suppression hearing, the court said: "I think that if Officer Lobb had revealed the limit and limitations of his training and experience, then, we might be in a different status here, because, then, the independent magistrate could have evaluated that in terms of search warrant and probable cause." The court believed that the officer's statements in his affidavit about his training and experience were misleading to the magistrate. Further, the court did not think that the "two experiences at the ages of ten and 18 to 20 ... buttress[ed] his lay opinion strongly enough, since there's no description in here of what he perceives burning, or burnt marijuana to smell like." To the court, this testimony was nothing more than a conclusion that "marijuana smells like marijuana." The court determined that "that kind of extrajudicial or extra evidentiary experience, cannot be determinative," and concluded that the representations in the affidavit were misleading. The court, therefore, concluded that "the affidavit must fail" because there "is no probable

"cause." The State filed a motion asking the court to reconsider.

{25} On reconsideration, the court said that its suppression order was based on a misrepresentation "that ... rose to the level to suppress the evidence." The court centered its attention on three of the officer's affidavit statements, namely: (1) "I have been so employed for six and one half years," referring to being a police officer; (2) "I am certified as a law enforcement officer by the New Mexico Law Enforcement Academy. In the course of my training, and career, I have had several occasions to smell lighted and burning marijuana;" and (3) "I have also learned through training and work related experience that persons who use and distribute marijuana often keep on hand devices for cleaning, packaging and weighing the marijuana prior to its ingestion." Referring to the issuance of the search warrant as predicated on these three affidavit statements, the court held that "those are misrepresentations. He intended to say what he said. They are not truthful. It is not a lie. But, he intended to say what he said. And they're not truthful." The court tempered its view by saying,

I don't mean in this case to suggest that Officer Lobb set out to say things in his affidavit that would mislead the Magistrate into thinking that he had a great deal more experience than he in fact had.... But, it is intentional, in the narrowest sense. If he said things that were not true, and resulted in something that was not accurate.

The court indicated that, had the officer placed in his affidavit the two prior personal experiences with burning marijuana, and had the magistrate found those statements to be sufficient to issue the warrant, the court "probably wouldn't look at this question. I would not suppress." The court then concluded by saying, "he cannot present misinformation."

{26} Our analysis of whether the court erred in entering its suppression order starts with *Gutierrez*, the case on which the court relied in entering the suppression order. Decided in March 1978, *Gutierrez* gave us two important rulings.

{27} First, *Gutierrez* ruled that "[t]here is no requirement that a magistrate make an 'independent investigation' to determine whether an informant is reliable. Simply stated, the magistrate, from the verified facts presented to him, must believe that the source is credible and that a factual basis exists for the information furnished." 91 N.M. at 545, 577 P.2d at 443.

{28} Second, in ruling that a defendant may challenge the veracity of affidavit statements made in seeking the issuance of a search warrant, *Gutierrez* said:

"We now hold that the defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material.

\* \* \* \* \* \*

However, once such a hearing is granted, more must be shown to suppress the evidence. Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful."

91 N.M. at 546–47, 577 P.2d at 444–45 (quoting *United States v. Carmichael*, 489 F.2d 983, 988 (7th Cir.1973) (emphasis removed).

{29} Three months after *Gutierrez* was decided, the United States Supreme Court decided *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Franks* required more than mere intentional misrepresentation in the affidavit in order to nullify a search warrant. *Franks* required defendants to allege and prove that the affiant's affidavit statements either constituted a "deliberate falsehood" or demonstrated a "reckless disregard for the truth":

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, ... [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.... Allegations of negli-

gence or innocent mistake are insufficient.... Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his [or her] hearing.

438 U.S. at 171–72, 98 S.Ct. 2674.

{30} Shortly after *Franks,* this Court decided *Cervantes.* Quoting the applicable *Franks'* language, we held that the defendant's allegations failed to state a claim entitling him to an evidentiary hearing because he did not allege that the affiant's statement was deliberate or in reckless disregard for the truth. *See Cervantes,* 92 N.M. at 648, 593 P.2d at 483. We also indicated that, to the extent *Gutierrez* and *State v. James,* 91 N.M. 690, 579 P.2d 1257 (Ct.App.1978), suggested or treated this law to the contrary, those cases were not to be followed. *See Cervantes,* 92 N.M. at 648, 593 P.2d at 483.

{31} After *Cervantes,* the issue of falsity in a warrant affidavit again came before us in *State v. Donaldson,* 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983). *Donaldson* added another condition precedent to a hearing: In order to obtain a hearing, the defendant's offer of proof must "indicate that the affidavit contained *material* deliberate falsehoods or a reckless disregard for the truth." 100 N.M. at 117, 666 P.2d at 1264 (emphasis added). Citing *Cervantes* and *Gutierrez,* we explained the test of materiality, based on *Franks:*

> The issue of whether facts intentionally omitted or misstated in an affidavit are of such materiality that their non-disclosure or misstatement may lead to invalidating the search warrant[ ] turns on whether these facts, because of their inherent probative force, give rise to a substantial probability that, had the information been set out or correctly stated in the affidavit, it would have altered a reasonable magistrate's determination of probable cause.

*Donaldson,* 100 N.M. at 117, 666 P.2d at 1264.

{32} *Gutierrez* and the later criminal cases in New Mexico involved misstatements, not omissions. However, the law applies with equal force to omissions of material facts made deliberately or in reckless disregard for the truth. *See United States v. Kennedy,* 131 F.3d 1371, 1376 (10th Cir.1997) ("the standards of 'deliberate falsehood' and 'reckless disregard' set forth in *Franks* apply to material omissions, as well as affirmative falsehoods"); *cf. Yount v. Millington,* 117 N.M. 95, 98, 869 P.2d 283, 286 (Ct.App.1993) (explaining that it is "clearly established that the omission of material facts undermines probable cause and violates the Fourth Amendment").

{33} In his brief on appeal, Defendant did not cite any authority on the falsity issue. Nor did Defendant discuss or distinguish any authority cited by the State, including such important cases as *Gutierrez, Franks, Cervantes,* and *Donaldson* .

{34} In sum, to suppress evidence based on alleged falsehoods and omissions in a search warrant affidavit, the defendant must show either "deliberate falsehood," or "reckless disregard for the truth," as to a material fact. A merely material misrepresentation or omission is insufficient. "Deliberate" and "reckless disregard" are each a step beyond "intentional."

{35} Based on our admonition in *Cervantes,* 92 N.M. at 648, 593 P.2d at 483, regarding *Gutierrez* ("[a]ny contrary suggestion or contrary treatment of this issue in *State v. Gutierrez* ... and *State v. James* ... is not to be followed"), and our reliance on *Franks,* the *Gutierrez* test of "intentional misrepresentation" is not to be applied. Yet, the court in the present case relied solely on this *Gutierrez* test, thereby invoking the wrong rule. Were the court to have evaluated the testimony and the credibility of the officer under the *Franks* test, the court may or may not have concluded that the falsehoods and omissions were neither deliberate nor in reckless disregard for the truth. The judge who heard the suppression hearing is no longer on the bench. Therefore, we return this case to the court for a new suppres-

sion hearing under the test as developed in *Cervantes* and *Donaldson*.

## CONCLUSION

{36} The State timely filed its appeal. We reverse and remand for a new suppression hearing because the court applied the overruled *Gutierrez* standard requiring only intentional misrepresentations, rather than the proper standards of deliberate falsehood and reckless disregard for the truth.

{37} **IT IS SO ORDERED.**

PICKARD, C.J., and ALARID, J., concur.

## APPENDIX

[T]he facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

I am a full time, salaried law enforcement officer employed by the Town of Clayton Police Department in Union County, State of New Mexico. My jurisdiction includes the Town of Clayton in the County of Union in the State of New Mexico. I have been so employed for six and one half years. I am certified as a law enforcement officer by the New Mexico Law Enforcement Academy. *In the course of my training and career I have had several occasions to smell lighted and burning marijuana.* . . .

. . .

I also know that on August 24, 1994 a search warrant for controlled substances was served at this same residence and that as a result of that search warrant Steven Trujillo was charged with Possession of a Controlled Substance (marijuana) with Intent to Distribute and Felon in Possession of a Firearm. As a result of those charges Steven Trujillo was convicted of Felon in Possession of a Firearm and Controlled Substances Distribution Prohibited (second offense). I have personally read the Judgment and Sentence filed in this matter on July 19, 1995 as Eighth District Court Cause number 94–37 CR.

At approximately 10:30 a.m. I arrived at the above described residence and knocked several times on the front (north) door of the residence. There was no immediate response and I could hear movement inside the residence. Jessica Gonzales answered the door. I have personal knowledge that Jessica Gonzales is a daughter of Linda Fernandez. I asked Gonzales if she knew where the parents of Leslie Vigil were because I had been dispatched to this residence to speak with them.

*As soon as Jessica Gonzales opened the door of the residence I smelled a strong odor of burning marijuana.* Gonzales replied that she had no knowledge of why I had been dispatched to the residence . . . .

. . .

I then drove to his residence which is located at 204 Jefferson in an attempt to locate him and serve him with the citation. I arrived at the residence at approximately 3:08 p.m. and again knocked on the front (north) door. Once again, the door was opened by Jessica Gonzales *and I again smelled the odor of burning marijuana. This time the odor of burning marijuana was stronger than the first time I had gone to the residence.*

*I have learned from training and experience that marijuana, in order to be burned and ingested is most commonly done so by hand rolled cigarettes or various types of pipes. These pipes are sometimes of commercial manufacture and in other instances are made from various household items such as cans, pipe fittings and other items which can be altered to burn and ingest marijuana. I have also learned through training and work related experience that persons who use and distribute marijuana often keep on hand devices for cleaning, packaging and weighing the marijuana prior to its ingestion.*

. . .

Therefore, I believe that based on the past criminal history of the residents of the above

described dwelling *and the strong odor of burning marijuana which was present at the residence on two occasions on the 12th day of November, 1997* that probable cause exists for a search warrant to obtain the above described evidence from the above described residence.