**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMSC-022**

**Filing Date: October 19, 2020**

**No. S-1-SC-37355**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BRADLEY SCOTT FARRINGTON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Jarod K. Hofacket, District Judge**

Released for Publication December 22, 2020.

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Eran Shemuel Sharon, Assistant Attorney General
Santa Fe, NM
for Appellee

**OPINION**

**BACON, Justice.**

**{1}**     Defendant Bradley Farrington was convicted of first-degree murder (willful and deliberate) contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), and received a life sentence. The Court is presented with two issues: (1) whether the district court erred by admitting hearsay statements under the forfeiture-by-wrongdoing exception (forfeiture exception)[1] and (2) whether sufficient evidence identifies Defendant as the perpetrator

---

[1] In his briefing before this Court, Defendant argued that the unconfronted statements at issue not only constituted inadmissible hearsay but also violated his right to confrontation under the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution. Despite devoting

of the underlying homicide. As to the forfeiture exception, Defendant argues that admission of multiple hearsay statements from the murder victim, Defendant's estranged wife Cassy Farrington (Victim), did not satisfy the intent element necessary for the forfeiture exception to apply. That is to say, Defendant contends that the State failed to prove by a preponderance of the evidence that Defendant killed Victim *for the purpose* of procuring her unavailability as a witness. Accordingly, Defendant claims admission of the hearsay statements was in violation of Rule 11-804(B)(5) NMRA.

**{2}** We hold that the district court properly admitted the statements under Rule 11-804(B)(5), and we take this opportunity to clarify New Mexico's rule-based form of the forfeiture exception. Defendant's intent to silence Victim can be inferred from his extensive history of domestic violence, the manner in which he leveraged his position in law enforcement to dissuade Victim from seeking help, and the contentious custody and divorce proceedings between Victim and Defendant. Further, we hold that sufficient evidence supports Defendant's convictions. Accordingly, we affirm Defendant's first-degree murder conviction.

## I.   BACKGROUND

## A.   Factual Background

**{3}** On March 24, 2014, Victim, a twenty-three-year-old mother of two, was found dead in her Silver City home. Victim was found fully clothed, lying face down in her bathtub with significant bruising and visible signs of strangulation. Defendant, Victim's estranged husband and a former Silver City police officer, became the focus of the resulting homicide investigation. Defendant was eventually arrested and indicted on an open count of murder.

**{4}** Defendant had a history of domestic violence against Victim that included many incidents of physical and mental abuse. This extensive abuse ranged from Defendant beating Victim to preventing her from speaking with her family to Defendant "dry-firing"[2] his police-issued service weapon at Victim's head, and many other incidents and forms of abuse. Defendant also subjected Victim to controlling behavior throughout their relationship.

**{5}** At the time of Victim's death, Victim and Defendant were going through a contentious and lengthy divorce. Custody of the couple's two young children was an area of particularly great conflict. For example, Defendant would take the children away and not allow Victim to know their location. On the night before Victim's death,

---

much of his briefing to the argument, Defendant abandoned the constitutional argument at oral argument by conceding that the statements at issue were nontestimonial and therefore outside the scope of the Confrontation Clause. In light of this concession, we will assume without deciding, that the statements at issue are nontestimonial and do not implicate the Confrontation Clause. This opinion therefore does not address the constitutional argument. *See Am. Fed'n of State, Cty. & Mun. Emps. v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, 2016-NMSC-017, ¶¶ 26, 29, 373 P.3d 989 (finding a party's concession on an issue sufficiently dispositive of the issue).
2Dry-firing is squeezing the trigger of an unloaded firearm.

Defendant became enraged when the couple's son referred to Victim's boyfriend as "Daddy David."

**{6}** Defendant was a Silver City police officer for much of the couple's relationship. During their relationship, Defendant intimated to Victim that it would be fruitless to report any abuse to law enforcement because he was a police officer. For example, Defendant told Victim, "You can tell the police all you want. Who are they going to believe? They're going to believe me over you every time." Defendant implied he could kill Victim and get away with it, saying, "If you don't stop fucking with me, I'll make it look like an accident, and I know how to do it because I'm a cop." He also told Victim, "I can do anything and not get caught." Defendant's status as a police officer rendered Victim reluctant, if not outright terrified, to report abuse to law enforcement.

**{7}** Victim described to friends and family many instances of domestic violence and other various abusive aspects of her relationship with Defendant. The State sought to introduce those statements at trial and filed a motion in limine for their admission under the forfeiture exception. The district court held a preliminary hearing on the forfeiture exception on March 3, 2017 (Hearing).

## B.    Hearing Regarding the Forfeiture Exception

**{8}** At the Hearing, the district court heard testimony from twelve witnesses offered by the State in support of its motion in limine to admit statements made by Victim. The witnesses recounted Victim's various statements regarding Defendant's threats and acts of domestic violence. The twelve witnesses consisted of Victim's family members, friends, coworkers, her boyfriend at the time of her death, and her insurance agent.[3]

**{9}** While each witness offered a different perspective, the following summary of Hearing testimony highlights the relevant points for the forfeiture analysis.

- Defendant was physically and mentally abusive toward Victim.

- Victim was afraid of Defendant, and she believed he was going to kill her.

- Defendant was controlling. For example, Defendant would withhold finances and personal effects and instruct Victim not to go to work or to the gym. Defendant would monitor Victim's computer use and restrict her cellphone use. Defendant would track Victim's whereabouts. Victim stated that Defendant was stalking her, or purportedly that the police were stalking her at Defendant's behest.

- Because of Defendant's position as a police officer, Victim did not want to report the abuse or seek the help of law enforcement. This apprehension was

---

[3]Victim relayed information to her insurance agent because she claimed that Defendant had attempted to run her off the road. Victim went to the insurance agent's office in a state of panic and shock as a means "to get away from [Defendant] for a bit," indicating such an incident had apparently happened in close proximity to the agent's office.

based either on Victim's belief that Defendant's influence would render bias by the police or fear of retaliation by Defendant or the police.

- Victim and Defendant were going through a divorce at the time of Victim's death, and Defendant was particularly controlling of the custody of the couple's children.

**{10}** Based on the testimony at the Hearing, the district court concluded that the forfeiture exception applied. This included a finding that Defendant wrongfully procured Victim's absence as a witness. Regarding the intent to procure Victim's absence, the district court concluded that "an extensive history of domestic violence and threatened violence and death at the hands of [V]ictim's husband, a law enforcement officer[,]" supported the intent element of the forfeiture exception by a preponderance of the evidence. To alleviate potential Rule 11-403 NMRA concerns, the district court limited the State to two witnesses from Victim's workplace and otherwise prevented all witnesses from giving cumulative testimony and testifying to domestic violence incidents prior to 2013.

## C.    Trial and Appeal

**{11}** At trial, seven of the twelve witnesses from the Hearing testified. The testimony at trial did not vary substantively from the testimony at the Hearing and will not be repeated here. After the four-day trial, the jury convicted Defendant of first-degree murder (willful and deliberate). Defendant received a life sentence for the conviction.

**{12}** Defendant now appeals his life sentence directly to this Court pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA.

## II.    FORFEITURE BY WRONGDOING

**{13}** The forfeiture exception has historically served as a common law doctrine that "extinguishes confrontation claims on essentially equitable grounds." *Crawford v. Washington*, 541 U.S. 36, 62 (2004). The exception is rooted in the maxim that a defendant cannot complain about the inability to confront and cross-examine a witness whose absence is a result of the defendant's own wrongful conduct. *See, e.g.*, *Giles v. California*, 554 U.S. 353, 359 (2008) (referring to the common law allowing admission at trial of prior statements of a witness kept from testifying "'by the means or procurement of the prisoner'" (quoting *Lord Morley's Case*, 6 How. St. Tr. 769, 771 (H.L. 1666))); *Reynolds v. United States.*, 98 U.S. 145, 158 (1878) (same); *State v. Maestas*, 2018-NMSC-010, ¶ 22, 412 P.3d 79 (citing *Giles* and *Reynolds*). While the forfeiture exception has historically served as an exception to a witness's right to confrontation, it has seen recent developments in American jurisdictions—including New Mexico—as an evidentiary exception to the rule against hearsay. *See, e.g.*, Fed. R. Evid. 804(b)(6) advisory committee's note on the 1997 amendment (providing that every federal circuit addressing the question has recognized the forfeiture exception); Rule 11-804(B)(5) advisory committee's note on the 2012 amendment ("[Rule 11-804(B)(5)] . . . reflects a substantial body of state and federal case law."). Thus, the forfeiture exception is *both*

an exception to confrontation rights and a codified evidentiary exception to the rule against hearsay.

**{14}** In light of Defendant's concession that Victim's statements were nontestimonial, as noted in footnote 1, paragraph 1, we will not analyze Defendant's constitutional challenge. Thus, in this opinion we will only address his challenges to the rule-based application of the forfeiture exception—namely, his argument that Victim's statements were improperly admitted under Rule 11-804(B)(5). Nevertheless, we will provide an overview of the common law-based forfeiture exception because, as described herein, the analysis for the common law- and rule-based forms of the forfeiture exception are the same.

**A. The Analysis Is the Same for Both the Common Law- and Rule-Based Forms of the Forfeiture Exception**

**1. Relevant law regarding the common law-based form of the forfeiture exception**

**{15}** The United States Supreme Court first recognized the forfeiture exception in 1878 in *Reynolds*. 98 U.S. 145; *see also Giles*, 554 U.S. at 366 ("This Court first addressed forfeiture in *Reynolds*."). The *Reynolds* Court relied on English forfeiture case law dating back to 1666 to hold that the "Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away." *Reynolds,* 98 U.S. at 158.

**{16}** Well over a century later, in 2008, the United States Supreme Court decided *Giles v. California*, which remains the Court's most recent exposition on the forfeiture exception. In the case at bar, the district court relied heavily on *Giles* in its ruling to admit Victim's statements under the forfeiture exception. As such, a closer review of the case is warranted.

**{17}** Dwayne Giles was convicted of first-degree murder after he shot his ex-girlfriend, Avie. *Giles*, 554 U.S. at 356-57. At trial, prosecutors used the forfeiture exception to admit statements Avie had previously made to police regarding threats by Giles. *Id.* The Supreme Court of California affirmed Giles' convictions, concluding that Giles had forfeited his confrontation rights because he intentionally committed a criminal act that ultimately caused Avie's unavailability as a witness. *People v. Giles*, 152 P.3d 433, 445-47 (2007), *vacated by Giles*, 554 U.S. at 377.

**{18}** The United States Supreme Court vacated the California Supreme Court's ruling, concluding that the California Supreme Court improperly construed the forfeiture exception. *Giles*, 554 U.S. at 366, 377. Justice Scalia, writing for the Court, determined that, while the forfeiture exception was an exception to confrontation at the time of the Constitution's ratification, *see id.* at 359, California erroneously interpreted the exception by failing to consider whether Giles killed Avie *with the intent* to cause her unavailability.

*See id.* at 365-66. Justice Scalia provided a lengthy historical examination of the exception with significant scrutiny on its origin in English case law. *Id.* at 358-66. Based on this reasoning, the *Giles* Court held that the forfeiture exception applies only when a defendant causes a witness's unavailability and does so with the intent of causing that unavailability. *See id.* at 368.

**{19}** The *Giles* Court cemented the requirement that a defendant intend to procure a witness's unavailability in order for the forfeiture exception to apply. While the *Giles* holding seemed to narrow the forfeiture exception, the Court concluded the opinion by noting that intent in domestic violence cases is inherently different:

> The domestic-violence context is, however, relevant for a separate reason. Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine. *Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry*, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*Id.* at 377 (emphasis added). In a concurrence, Justice Souter, joined by Justice Ginsburg, took this perspective further.

> [There is no] reason to doubt that the element of intention would normally be satisfied by the intent inferred on the part of the domestic abuser in the classic abusive relationship, *which is meant to isolate the victim from outside help, including the aid of law enforcement and the judicial process*. If the evidence for admissibility shows a continuing relationship of this sort, it would make no sense to suggest that the oppressing defendant miraculously abandoned the dynamics of abuse the instant before he killed his victim, say, in a fit of anger.

*Id.* at 380 (Souter, J., concurring) (emphasis added).

**{20}** The New Mexico Supreme Court has addressed the forfeiture exception on three separate occasions. *See Maestas*, 2018-NMSC-010; *State v. Romero*, 2007-NMSC-013, 141 N.M. 403, 156 P.3d 694; *State v. Alvarez-Lopez*, 2004-NMSC-030, 136 N.M. 309, 98 P.3d 699.

**{21}** This Court first encountered the forfeiture exception in *Alvarez-Lopez* in 2004, four years prior to *Giles*. In *Alvarez-Lopez*, the defendant had absconded after indictment and remained a fugitive for seven years to avoid trial. 2004-NMSC-030, ¶¶ 6-7. During that time, a key prosecution witness was deported. *Id.* The district court

allowed the prosecutor to admit statements of the key witness under the forfeiture exception, reasoning that but for the defendant's wrongful act of absconding, the witness would have testified at a trial held years earlier. *Id.* We reversed the district court's ruling. *Id.* ¶ 45.

**{22}** The *Alvarez-Lopez* Court began its analysis by first looking to the common law history of the forfeiture exception. *Id.* ¶ 8. The Court then observed how the Federal Rules of Evidence codified the forfeiture exception as an evidentiary exception to hearsay. *Id.* ¶ 9 (citing Fed. R. Evid. 804(b)(6)). The Court paid particularly close attention to the language of federal Rule 804(b)(6), which excepts otherwise inadmissible hearsay when "the statement [is] offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." *Id.* ¶ 9 (quoting Fed. R. Evid. 804(b)(6)). The Court then recognized that federal "Rule 804(b)(6) is a federal rule of evidence that has not been adopted into our rules of evidence; however, we are bound to apply federal law in determining the minimum level of a criminal defendant's constitutional right to confrontation."[4] *Id.*

**{23}** Guided extensively by federal Rule 804(b)(6), the *Alvarez-Lopez* Court set forth four conditions that the state must prove by a preponderance of the evidence in order to apply the forfeiture exception: "(1) the declarant was expected to be a witness; (2) the declarant became unavailable; (3) the defendant's misconduct caused the unavailability of the declarant; and (4) the defendant intended by his misconduct to prevent the declarant from testifying." *Id.* ¶ 10. The Court was careful to stress that it must be shown that a defendant engaged in conduct that was intended to procure a witness's unavailability. *Id.* ¶ 13. The Court, however, cabined this requirement by emphasizing that "[t]he State need not . . . show that [the defendant's] sole motivation was to procure the declarant's absence; rather, it need only show that the defendant was motivated *in part* by a desire to silence the witness." *Id.* (omission in original) (internal quotation marks and citation omitted).

**{24}** Three years later, in *Romero*, 2007-NMSC-013, this Court was asked to abandon the intent requirement and instead adopt a broader interpretation of the forfeiture exception. We declined to do so, holding that the right to confrontation is forfeited only when a defendant engages in conduct designed to procure a witness's unavailability. *Id.* ¶¶ 34-35. *Romero* further instructed that "the emphasis must be not only on wrongdoing but on intentional wrongdoing, from which an inference of waiver might be appropriate or in which an equitable conclusion of forfeiture is justified." *Id.* ¶ 34.

**{25}** The analyses set forth under *Alvarez-Lopez* and *Romero* were confirmed by the United States Supreme Court in *Giles*. Notably, although both *Alvarez-Lopez* and *Romero* predate the *Giles* opinion, this Court also held that intent to procure a witness's absence was a necessary requirement in determining whether a defendant forfeited their right to confrontation. We acknowledged this point in *Maestas*, which was this

---

[4]In 2012, The New Mexico Rules of Evidence adopted the forfeiture exception as Rule 11-804(B)(5). Rule 11-804(B)(5) is taken verbatim from federal Rule 804(b)(6).

Court's most recent opinion on the forfeiture exception. *See* 2018-NMSC-010, ¶ 27 ("Our *Alvarez-Lopez* and *Romero* analyses gained further support . . . when the United States Supreme Court recognized the common-law forfeiture exception's codification in the federal rule and added that the constitutional confrontation right must apply as broadly as we had recognized in *Romero*." (citing *Giles*, 554 U.S. at 367)).

**{26}** The *Maestas* Court held that "wrongdoing, for the purposes of the forfeiture-by-wrongdoing exception, need not take the form of overt threat of harm; various forms of coercion, persuasion, and control may satisfy the requirement." 2018-NMSC-010, ¶ 2. The facts underlying *Maestas* involved domestic violence. *Id.* ¶¶ 3-4. There, the defendant was on trial for physically abusing his girlfriend. *Id.* ¶ 1. While in jail, the defendant made repeated calls to the victim asking her to lie and recant statements she made to police. *Id.* ¶ 11. The defendant also made aggressive comments indirectly threatening the victim. *Id.* ¶ 38. Ultimately, the victim chose not to testify against the defendant. *Id.* ¶ 10. Applying the *Alvarez-Lopez* factors, the *Maestas* Court held that the requirements for the forfeiture exception were met. *Id.* ¶¶ 2, 29, 42, 45. The Court concluded that the intent requirement of the forfeiture exception was satisfied because the "history of the abusive relationship and the various threatening phone calls may themselves have 'expressed' an 'intent to isolate' [the victim] and to prevent her from cooperating with the prosecution." *Id.* ¶ 45 (quoting *Giles*, 554 U.S. at 377).

### 2. The rule-based forfeiture exception contemplated by Rule 11-804(B)(5) presents the same analysis as the common law-based analysis

**{27}** *Alvarez-Lopez*, *Romero*, and *Maestas* each addressed the forfeiture exception in the constitutional context. New Mexico has not yet squarely answered whether the forfeiture analysis for the rule-based exception codified as Rule 11-804(B)(5) differs from the analysis for the common law-based exception to confrontation. In *Maestas*, we expressly declined to decide any difference between the two forms. 2018-NMSC-010, ¶ 28 ("We have no occasion to examine here any potential distinctions between a rule-based form of the exception and the common-law form."). As a hearsay exception, New Mexico is free to craft a broader or stricter interpretation of the forfeiture exception.

> Because the forfeiture doctrine can provide both an exception to the general rule against hearsay and an exception to the confrontation right, the United States Constitution does not prevent the states from crafting a forfeiture-by-wrongdoing exception for *nontestimonial* hearsay that does not require any proof of a defendant's specific intent.

*People v. Burns*, 832 N.W.2d 738, 744 (Mich. 2013); *see also Giles*, 554 U.S. at 376; *Roberts v. State*, 894 N.E.2d 1018, 1024 (Ind. Ct. App. 2008); *State v. Jensen*, 2011 WI App 3, ¶¶ 23-28, 331 Wis. 2d 440, 794 N.W.2d 482; *Proffit v. State*, 2008 WY 102, ¶ 10, 191 P.3d 963 (Wyo. 2008).

**{28}** Rule 11-804(B)(5) provides that "[a] statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result" is "not excluded by the rule against

hearsay if the declarant is unavailable as a witness." We conclude that the analysis set forth in *Alvarez-Lopez*, *Romero*, and *Maestas* is applicable to Rule 11-804(B)(5), and we see no reason why the rule-based analysis should differ from the common law-based analysis outlined in those cases. We provide the following reasons as support for our conclusion.

**{29}**     First, a plain language reading of Rule 11-804(B)(5) does not establish the rule-based form as broader or narrower than the common law form. *Accord Apodaca v. AAA Gas Co.*, ¶ 88, 2003-NMCA-085, 134 N.M. 77, 73 P.3d 215 (providing that the rules pertaining to statutory construction apply when a court interprets the rules of the Supreme Court). There is no indication that Rule 11-804(B)(5) was intended to deviate from the common law understanding of the forfeiture exception or its analytical framework. *See State v. Brown*, 1998-NMSC-037, ¶ 45, 126 N.M. 338, 969 P.2d 313 (presuming a rule of evidence follows its common law roots).

**{30}**     Second, Rule 11-804(B)(5) is taken verbatim from federal Rule 804(b)(6). *See* Rule 11-804(B)(5) advisory committee's note on the 2012 amendment. Federal courts have interpreted the federal rule congruently with the common law rule. *See, e.g.*, *Giles*, 554 U.S. at 365 ("[T]he Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots." (internal quotation marks and citation omitted)); *United States v. Johnson*, 767 F.3d 815, 821 (9th Cir. 2014) ("[T]he forfeiture exception is consistent with the Confrontation Clause, not because it is a means for determining whether hearsay is reliable, but because it is an equitable doctrine designed to prevent defendants from profiting from their own wrongdoing."); *United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012) ("Rule 804(b)(6) of the Federal Rules of Evidence adopted this well-established common law exception to the hearsay rule."). The only variance between the constitutional doctrine and federal Rule 804(b)(6) is that (1) "the constitutional doctrine applies only to testimonial hearsay," and (2) "the constitutional doctrine seems to require direct complicity in wrongdoing by the defendant, while Rule 804(b)(6) allows admission of hearsay based on the defendant's 'acquiescence' in the wrongdoing of others." Tom Lininger, *The Sound of Silence: Holding Batterers Accountable for Silencing Their Victims*, 87 Tex. L. Rev. 857, 905 (2009). This persuasive federal authority reinforces that Rule 11-804(B)(5) should be read in tandem with the constitutional analysis outlined in *Alvarez-Lopez* and its progeny. *See State v. Torres*, 1998-NMSC-052, ¶ 13, 126 N.M. 477, 971 P.2d 1267 (noting that New Mexico courts may rely on federal interpretation of a rule of evidence when that rule contains an identical provision in the New Mexico Rules of Evidence), *overruled on other grounds by Alvarez-Lopez*, 2004-NMSC-030, ¶ 23.

**{31}**     Third, *Alvarez-Lopez*, which was written four years before *Giles* and eight years before New Mexico adopted Rule 11-804(B)(5), was heavily influenced by federal Rule 804(b)(6). *See* 2004-NMSC-030, ¶¶ 9-14; *see also Romero*, 2007-NMSC-013, ¶ 33 ("[T]he same rationale seems to underlie the federal rule of evidence on which we relied in *Alvarez-Lopez*[.]"). Specifically, the four-factor test for determining whether *a constitutional violation* occurred was based on the federal *rule of evidence*. *Alvarez-Lopez*, 2004-NMSC-030, ¶ 10; *see also Maestas*, 2018-NMSC-010, ¶ 25 ("Although we had not adopted a Rule 804(b)(6) analog at the time, we observed in *Alvarez-Lopez* that

we are compelled to grant defendants at least as much protection as the federal rule, derived as it is from the constitutional requirement of confrontation."). The influence of federal Rule 804(b)(6) on *Alvarez-Lopez* and its four-factor test demonstrates that New Mexico's rule-based forfeiture exception—which is identical to the federal rule—is to be read harmoniously with the analysis set forth by *Alvarez-Lopez*.

**{32}**     Finally, committee commentary to Rule 11-804(B)(5) states that the rule "reflects a substantial body of state and federal case law." The commentary cites only two cases for this proposition—*Alvarez-Lopez* and *Romero*. This evinces that *Alvarez-Lopez* and *Romero* should guide the evidentiary analysis.

## B.      The District Court Did Not Err in Admitting the Statements Under Rule 11-804(B)(5)

**{33}**     Having established that *Alvarez-Lopez*, *Romero*, and *Maestas* guide our evidentiary analysis, we hold that the district court properly admitted Victim's statements pursuant to Rule 11-804(B)(5). Because we are only analyzing Defendant's evidentiary challenge, we review the district court's ruling for abuse of discretion. *See Maestas,* 2018-NMSC-010*, ¶* 21. Concluding that the district court did not abuse its discretion, we hold that the district court properly admitted Victim's statements under Rule 11-804(B)(5), and we highlight the relevant facts that support the district court's ruling.

**{34}**     The *Alvarez-Lopez* factors must be satisfied in order for the forfeiture exception to apply. 2004-NMSC-030, ¶ 10. To recall, those four factors are: "(1) the declarant was expected to be a witness; (2) the declarant became unavailable; (3) the defendant's misconduct caused the unavailability of the declarant; and (4) the defendant intended by his misconduct to prevent the declarant from testifying." *Id.* Defendant only disputes that the fourth factor (intent) was not satisfied. Thus, we need not, and will not, address factors one, two, or three.

**{35}**     As the forfeiture doctrine is an exception to the hearsay rule, the trial court must review the foundation for the *Alvarez-Lopez* factors through the lens of Rule 11-104(A) NMRA. *See State v. Martinez*, 2007-NMSC-025, ¶¶ 18-19, 21, 141 N.M. 713, 160 P.3d 894. Rule 11-104(A) directs that the trial court must address preliminary questions about admissibility. In applying this rule, *State v. Martinez*, teaches that whether evidence is admissible under an exception to the hearsay rule is a preliminary question that is determined by the trial court under Rule 11-104(A). Rule 11-104(A) provides that "the [C]ourt must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." In assessing this, "the court is not bound by the rules of evidence, except those on privilege." Rule 11-104(A).  This rule only requires that the trial court "be satisfied by a preponderance of the evidence that the foundational requirement has been met." *Martinez*, 2007-NMSC-025, ¶ 19.

**{36}**     Defendant argues that the district court erred in admitting "multiple unconfronted, accusatorial hearsay statements of [Victim], without a preponderance of the evidence that [Defendant] caused her death *for the specific purpose* of preventing her

availability." The district relied almost exclusively on *Giles* in finding intent, concluding that

> [t]here is a preponderance of the evidence that [Defendant] intentionally caused [Victim's] unavailability as a witness. The State's proffered witnesses at Hearing outline an extensive history of domestic violence and threatened violence and death at the hands of [Victim's] husband, a law enforcement officer. "Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine." [*Giles*, 554 U.S. at 377; *Romero* 2007-NMSC-013.]

**{37}**  The district court correctly attached significance to the history of domestic violence. There are five facts—which were presented to the district court at the Hearing and are subsumed within the "extensive history of domestic violence" cited by the district court—that establish the inference of Defendant's intent to cause Victim's unavailability. *See Maestas*, 2018-NMSC-010, ¶ 40 ("In cases involving long-term domestic relationships, various factors may support an inference that wrongdoing has caused unavailability."); *Alvarez-Lopez*, 2004-NMSC-030, ¶ 13 ("It may be sufficient to infer under certain facts that a defendant intended by his misconduct to prevent the witness from testifying.").

**{38}**  First, Defendant physically and mentally abused Victim. The United States Supreme Court and this Court have observed that acts of domestic violence, especially acts that culminate in murder of the victim, are probative for ascertaining intent under the forfeiture exception. *See Giles*, 554 U.S. at 377; *Maestas*, 2018-NMSC-010, ¶ 44. Thus, the many instances of Defendant's abuse support an inference of intent. *See Giles*, 554 U.S. at 380 (Souter, J., concurring) (stating that when there is a history of abusive behavior, "it would make no sense to suggest that the oppressing defendant miraculously abandoned the dynamics of abuse the instant before he killed his victim").

**{39}**  Second, Defendant engaged in behavior intended to isolate Victim. For example, Defendant did not want Victim to go to work or the gym. Defendant would not allow Victim to access her personal effects, such as clothes or pictures, and would withhold money from her. Defendant would also track Victim, keeping close tabs on her whereabouts, especially if she left Silver City. Additionally, Defendant would examine Victim's laptop, take Victim's phone, and prevent Victim from communicating with her family. Victim also felt that Defendant was stalking her and using other Silver City police officers to harass her. These facts support the inference of Defendant's intent to isolate Victim and prevent her from seeking outside help. Moreover, as described above, Defendant was physically and mentally abusive. *See Giles*, 554 U.S. at 377 (providing

that evidence of domestic violence can "support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse").

{40}    Third, custody of the couple's children was a point of significant hostility, and Defendant exhibited disdain at Victim having custody of the children. Ten witnesses at the Hearing referenced continuing issues surrounding the children and custody. Defendant would threaten to take the children away from Victim. He reportedly once took the children away from Victim and indicated she could not know where the children were until Victim decided if she was leaving. Further, on the night before Victim's death, Defendant was apparently very upset that one of the children referred to Victim's boyfriend as "Daddy David." These facts support an inference Defendant killed Victim with an intent to silence her at custody proceedings.

{41}    Fourth, Defendant and Victim were going through a contentious divorce at the time of the Victim's death. The contentious nature of the divorce proceedings, combined with Defendant's history of controlling behavior, would support an inference that Defendant had the intent to render Victim unavailable from those divorce proceedings. Indeed, in briefing before the district court, Defendant himself highlighted the significance of these divorce proceedings, arguing, "[t]here is no evidence other than to speculate because they were going through a divorce and therefore [Defendant] made [Victim] unavailable."

{42}    Finally, Defendant, a police officer for essentially all of his relationship with Victim, exploited his status as a police officer to dissuade Victim from going to law enforcement. For example, Victim had stated that Defendant told her, "You can tell the police all you want. Who are they going to believe? They're going to believe me over you every time." Defendant also told Victim, "If you don't stop fucking with me, I'll make it look like an accident, and I know how to do it because I'm a cop." This behavior served to dissuade Victim from seeking help from law enforcement and communicated to Victim that she would be helpless if she went to law enforcement due to Defendant's position as a police officer.

{43}    Two years ago, we made it clear that there does not have to be "direct evidence of intent because it may suffice 'to infer under certain facts' that the wrongdoer intended to prevent the witness from testifying." *Maestas*, 2018-NMSC-010, ¶ 43 (quoting *Alvarez-Lopez*, 2004-NMSC-030, ¶ 13). In *Maestas*, we determined that a history of abusive conduct coupled with conduct designed to isolate the victim was sufficient to support an inference of intent required under the forfeiture exception. *See id.* ¶ 45. In the instant case, just like in *Maestas*, there exists silencing and isolating behavior on the part of Defendant. Indeed, the facts here are more extreme than the facts in *Maestas* because Defendant leveraged his status as a police officer to further dissuade Victim from seeking the help of law enforcement. Defendant exploited his job and utilized abusive behavior to control Victim and prevent her from seeking outside help. This behavior falls within the very type of conduct that the *Maestas* Court deemed sufficient to infer intent under the forfeiture exception. This conclusion is further buttressed by the observations of multiple United States Supreme Court Justices in *Giles. See* 554 U.S. at 377 (describing that intent can be found where there is demonstrated history of

domestic abuse); 554 U.S. at 380 (Souter, J., concurring) (same); *see also* Clifford S. Fishman, *Confrontation, Forfeiture, and Giles v. California: An Interim User's Guide*, 58 Cath. U. L. Rev. 703, 728-29 (2009) (concluding that a majority of the opinions in *Giles* held that intent to thwart witness testimony could be inferred from a history of abuse).

**{44}**    The *Maestas* Court also reinforced that "the party pressing the forfeiture exception need not show the wrongdoer was motivated solely by a desire to procure the witness's unavailability; instead, the proponent need only establish that the wrongdoer 'was motivated *in part*' by a desire to procure the unavailability." *Maestas*, 2018-NMSC-010, ¶ 43 (quoting *Alvarez-Lopez*, 2004-NMSC-030, ¶ 13). While Defendant here may have had multiple motives to kill Victim, an inference can be made that one of those motives was to silence Victim as witness. This inference can be found by the existence of ongoing divorce proceedings and custody disputes between Victim and Defendant. *Alvarez-Lopez* instructs that intent can be found where a murder victim was expected to be a witness against the defendant. *See* 2004-NMSC-030, ¶ 13. While Victim was expected to be a witness in proceedings separate from the matter at bar, other jurisdictions have found that intent to procure unavailability is not confined to any particular proceeding. *See United States v. Gray*, 405 F.3d 227, 241-42 (4th Cir. 2005) ("[W]e conclude that Rule 804(b)(6) applies whenever the defendant's wrongdoing was intended to, and did, render the declarant unavailable as a witness against the defendant, without regard to the nature of the charges at trial in which the declarant's statements are offered."); *see also United States v. Dhinsa*, 243 F.3d 635, 652-53 (2d Cir. 2001); *United States v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999); *People v. Kerley*, 233 Cal. Rptr. 3d 135, 174-75 (Cal. Ct. App. 2018); *Vasquez v. People*, 173 P.3d 1099, 1104 (Colo. 2007) (en banc). We agree with these jurisdictions, and conclude that there is a sufficient basis to infer that Defendant intended, at least in part, to silence Victim as a witness in custody and divorce proceedings. This conclusion conforms with the forfeiture exception's historical roots in equity, and the reasoning that underpins the hearsay exception—"a prophylactic rule to deal with abhorrent behavior which strikes at the heart of the justice system itself." Fed. R. Evid. 804(b)(6) advisory committee's note to 1997 amendment (internal quotation marks and citation omitted).

## III.    SUFFICIENCY OF THE EVIDENCE AND UNDEVELOPED ARGUMENTS

### A.    Sufficiency of the Evidence

**{45}**    Defendant argues that insufficient evidence supports his first-degree murder conviction. The crux of Defendant's argument solely contends that the State did not prove *he* committed first-degree murder. He argues there was not "sufficient evidence to prove beyond a reasonable doubt the essential element of identity," or in other words, "that the brutal homicide of [Victim] was committed by [Defendant], and not another person." We disagree.

**{46}**    "In challenging the sufficiency of evidence used to convict a defendant of a crime, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Romero*, 2019-NMSC-007, ¶ 51, 435

P.3d 1231 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Torres*, 2018-NMSC-013, ¶ 42, 413 P.3d 467 (internal quotation marks and citation omitted). "In determining the sufficiency of the evidence, we review the evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Thomas*, 2016-NMSC-024, ¶ 37, 376 P.3d 184 (internal quotation marks and citation omitted).

**{47}** Testimony at trial established an abusive relationship where Victim repeatedly informed friends and family of her fear of Defendant and concern he would hurt her or kill her. Testimony further established that Defendant and Victim were involved in a contentious divorce with much dispute about the custody of the children. Moreover, one medical expert at trial concluded that Victim died of strangulation while another concluded that strangulation was a likely cause of death. This cause of death is significant because testimony outlined that Defendant's training as a police officer familiarized him with "chokeholds," including the "carotid restraint" technique (also known as a "sleeper hold"), which is essentially a means of strangulation. At trial, the carotid restraint technique was described as an inherently dangerous "weapon of opportunity" reserved only for life-and-death situations. Additionally, the jury heard testimony that Defendant had a history of choking Victim during sex to the extent that Victim would pass out.

**{48}** Sufficient evidence supports that Victim was subjected to Defendant's repeated abuses, which culminated in her murder by strangulation. Viewed in a light most favorable to the verdict, this is sufficient to establish that Defendant, and not another person, murdered Victim. Defendant also contends that evidence of another male's DNA found under Victim's fingernail militates against his guilt. As the State points out, the jury heard this evidence and rejected this argument by finding Defendant guilty. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (stating that this Court considers whether "a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction" (internal quotation marks and citation omitted)); *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("The [jury] may reject [D]efendant's version of the incident.").

## B. Defendant's Undeveloped Arguments

**{49}** Last, we address arguments raised but not developed by Defendant. Defendant devotes two paragraphs of his fifty-page brief to argue that the admission of the hearsay statements at issue violated Rule 11-404(B)(1) NMRA and Rule 11-403. Defendant does not develop these arguments in any meaningful way but instead states the rule and makes the conclusory claim it was violated. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 (stating an appellate court "has no duty to review an argument that is not adequately developed"). Regarding Rule 11-404(B)(1), the State charged Defendant with first-degree murder and offered witness statements as proof of Defendant's motive and intent under Rule 404(B)(2). The State provided reasonable general notice in conformance with Rule 404(B)(2)(a). Regarding Rule 11-403, the district court specifically tailored the number of witnesses from Victim's workplace who

could offer hearsay testimony and further prevented the State from eliciting statements that might be unfairly prejudicial. We view this ruling as the district court using its discretion to find the proper balance of Rule 11-403. *See Romero*, 2019-NMSC-007, ¶ 26.

## IV.    CONCLUSION

**{50}**    Defendant's extensive history of domestic violence, exploitation of his status as a police officer, and acrimonious divorce and custody proceedings supports the district court's determination that Defendant intended to procure Victim's unavailability as a witness. This satisfies the intent element required for the forfeiture exception under Rule 11-804(B)(5). Sufficient evidence supports Defendant's first-degree murder conviction. For these reasons, and reasons outlined above, we affirm Defendant's conviction.

**{51}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**