This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40639

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EDWARD BINGHAM,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Thomas E. Lilley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Edward J. Bingham
Chaparral, NM

Pro Se Appellant

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Defendant Edward Bingham appeals the jury's convictions of sexual exploitation of children (SEC), contrary to NMSA 1978, Section 30-6A-3(D) (2016) (recording) and Section 30-6A-3(A) (possession). Defendant challenges various pretrial rulings regarding the circumstances of the detention and arrest, the warrantless seizure of the vehicle, the sufficiency of a search warrant, and the district court's determination that hearsay evidence from Victim was admissible based on forfeiture by wrongdoing principles. Defendant also contests several aspects of the trial itself, including the late disclosure of an expert witness, witness testimony identifying Victim, the chain of custody and foundation for cellphone evidence, and the sufficiency of the evidence supporting the SEC recording convictions. Last, Defendant argues that the cumulative effect of all of these issues warrants reversal. After careful review of each issue raised by Defendant on appeal, we affirm.

## BACKGROUND

**{2}** In this memorandum opinion, we first briefly develop the procedural background and reserve discussion of additional facts for our analysis.

**{3}** Defendant was initially represented by counsel after being charged with three counts of SEC (recording), *see* § 30-6A-3(D), and one count of SEC (possession), *see* § 30-6A-3(A). Eventually Defendant filed a motion for self-representation, which after inquiry, the district court granted. While representing himself, Defendant filed more than thirty pretrial motions, many of them involving the admission or suppression of evidence, which the district court addressed over many hearings. Ultimately, the parties conducted a two-and-a-half-day trial, and at the conclusion, the jury convicted Defendant on all four counts. Defendant appeals.

## DISCUSSION

**{4}** First, we emphasize that an appeal is not a second trial. This Court operates under a presumption that "favors the correctness of the trial court's actions," and Defendant as the appellant "must affirmatively demonstrate [the] assertion of error." *Farmers, Inc. v. Dal Mach. Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063. Defendant challenges the district court's rulings on multiple pretrial motions as well as on several matters that arose during trial. Defendant's brief in chief was submitted by appellate counsel, but Defendant sought permission to file a reply brief on his own behalf, which we granted and then considered. We begin with Defendant's pretrial challenges.

## I. Pretrial Challenges

**{5}** On appeal, Defendant contends that certain evidence should have been suppressed and other evidence should have been excluded.

## A. Defendant's Suppression Arguments: Expansion of the Stop, De Facto Arrest, and the Warrant for the Vehicle

**{6}** Defendant argues that evidence should have been suppressed because (1) the initial encounter was impermissibly expanded without reasonable suspicion; (2) the circumstances establish a de facto arrest without probable cause; and (3) the vehicle was unconstitutionally seized and searched. "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo," *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted), and consider "the facts in the light most favorable to the prevailing party," *State v. Skippings*, 2014-NMCA-117, ¶ 8, 338 P.3d 128 (internal quotation marks and citation omitted). Importantly, "reviewing courts are to give sufficient deference to the findings of fact of our trial courts and not reweigh evidence on appeal." *State v. Wright*, 2022-NMSC-009, ¶ 2, 503 P.2d 1161. In accordance with our standard of review, for each of Defendant's three pretrial challenges, we lay out the governing law, set forth those relevant facts relied on by the district court that were supported by the evidence, and conduct de novo our analysis of the law to the facts.

1.      **The Expansion of the Initial Encounter Was Supported by Reasonable Suspicion**

**{7}** Defendant argues that the scope of the initial encounter was unlawfully expanded in violation of Article II, Section 10 of the New Mexico Constitution when an officer posed a brief question about weapons. *See* N.M. Const. art. II, § 10. Under the New Mexico Constitution, "all questions asked during the investigation of a traffic stop," are required to "be reasonably related to the initial reason for the stop." *State v. Leyva*, 2011-NMSC-009, ¶ 55, 149 N.M. 435, 250 P.3d 861. "Unrelated questions are permissible when supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter." *Id.* Defendant contends that no reasonable suspicion supported expansion of the scope of the initial encounter. As we explain, the scope of the initial encounter with Defendant was justified by officer safety concerns.

**{8}** At approximately eight in the evening, Chaves County Deputy Whitzel called for backup after spotting a black vehicle with its lights on in the middle of a field, approaching, and observing two bodies inside, a male and a female, lying down in the back. Additional deputies, including Deputy Padilla responded. Deputy Whitzel testified that the bodies could have been dead or sleeping, or the vehicle could have been stolen, based on past experience. Deputy Padilla also testified to a concern that the vehicle could have been stolen. The deputies approached the vehicle and knocked on the door after seeing movement inside. The vehicle door was locked, and after Deputy Padilla said, "Open the door," the door unlocked. Once law enforcement opened the door, Deputy Padilla asked whether there were any weapons in the vehicle. Defendant answered in the negative. Based on training, experience, and the totality of the circumstances measured against an objective standard, Deputy Padilla reasonably began the evening encounter with unknown occupants of a running vehicle in an isolated location with a brief question about weapons, which was related to officer safety. *See id.* ¶ 59 ("Reasonable suspicion is measured by an objective standard

based on the totality of the circumstances."). For these reasons, Deputy Padilla's question did not run afoul the New Mexico Constitution. *See id.* ¶¶ 35, 60-61 (holding that questions about weapons were permissible based on the officer's experience and training, considerations of officer safety, and the totality of the circumstances).

**2.      Defendant's Detention Did Not Ripen Into an Illegal De Facto Arrest**

**{9}**     Defendant next argues that the detention that followed the police encounter at the vehicle ripened into an illegal de facto arrest and evidence discovered thereafter should have been suppressed. "When a detention exceeds the boundaries of a permissible investigatory stop, it becomes a de facto arrest requiring probable cause." *State v. Flores*, 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038. This inquiry requires balancing competing considerations: "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion." *State v. Ortiz*, 2017-NMCA-062, ¶ 11, 400 P.3d 312 (internal quotation marks and citation omitted). To evaluate when a detention has become a de facto arrest, we consider several factors including, "(1) the government's justification for the detention, (2) the character of the intrusion on the individual, (3) the diligence of the police in conducting the investigation, and (4) the length of the detention." *Skippings*, 2014-NMCA-117, ¶ 14 (internal quotation marks and citation omitted). Defendant argues that these factors applied to the detention in the present case resulted in a de facto arrest without probable cause because the detention was unjustified, the police were not diligent, the detention was impermissibly long, and the intrusion was too great. To address Defendant's arguments, we describe the circumstances of the detention in the context of the four factors.

**{10}**     The detention was justified for law enforcement to investigate the seeming contradiction between their observations and Victim's statements. After asking about weapons, Deputy Padilla noticed an obvious age difference between the two individuals in the vehicle—based on appearances, one individual was clearly an adolescent and the other was in his forties. Given Victim's partial state of undress in the back of the vehicle and adolescent appearance, it was reasonable for law enforcement to suspect that Defendant had engaged or was about to engage in criminal sexual penetration of a minor as prohibited by NMSA 1978, Section 30-9-11(G)(1) (2009). In order to confirm or dispel their reasonable suspicion, law enforcement kept Defendant and Victim separated at the scene while they conducted their investigation. Defendant was placed, not in handcuffs, in the back of a police car. Deputy Padilla interviewed Victim. Although Victim reported that she was sixteen and the relationship was consensual, Victim had no identification, initially gave a false name, withheld guardian contact information, and at various times gave Deputy Padilla the ages eighteen, fifteen, and sixteen. Victim did not reveal her true identity until about an hour into the investigation, and Deputy Padilla therefore could not verify any of Victim's assertions or arrange for Victim to be picked up. Also at the scene, Deputy Padilla searched police and court records and discovered that Defendant had two pending cases involving criminal sexual penetration of a minor, who was Victim. The officer in charge of the pending case was contacted. At some point, law enforcement discovered a no-contact order between Defendant and Victim,

and Defendant was arrested for "violating conditions of release." Defendant maintains that law enforcement had no interest or justification in continuing the investigation after Victim reported that she was sixteen—above the "age of consent"—and the relationship was consensual. To the contrary, these statements did not dispel suspicion, based on all of the circumstances.

**{11}** As we have described, Victim was slow to provide information, gave some contradictory responses, and law enforcement was not required to believe Victim when her assertions appeared to be contradicted by the circumstances—Victim appeared young, partially unclothed, in the company of a much older man in an isolated area. Defendant's clothing was in disarray when he came out of the vehicle, and as Victim was about to be moved into Deputy Padilla's vehicle, Deputy Padilla observed Victim removing a jar of anal lubricant from Defendant's vehicle. Defendant was not ultimately arrested for or charged with criminal sexual penetration or contact of a minor. *See* § 30-9-11 (defining criminal sexual penetration, in some instances, to involve children between the ages of thirteen and sixteen or thirteen and eighteen); NMSA 1978, § 30-9-13 (2003) (defining criminal sexual contact of minor in a similar manner, involving children between the ages of thirteen and eighteen). Nevertheless, law enforcement had an ongoing and unresolved reasonable suspicion to investigate those crimes while Defendant was detained. *See State v. Collins*, 2005-NMCA-044, ¶ 35, 137 N.M. 353, 110 P.3d 1090 ("That [the d]efendant was not charged with violating either of these statutes is immaterial because our analysis only focuses on whether the officer articulated a reasonable suspicion that [the d]efendant violated the statutes."), *overruled on other grounds by State v. Willie*, 2009-NMSC-037, ¶ 18, 146 N.M. 481, 212 P.3d 369. After Victim's true identity was revealed, law enforcement was able to connect Defendant and Victim to the pending case and no-contact order. [1] The present case did not involve a resolution of reasonable suspicion followed by an unjustified "expansion of the investigation to look, search, or fish elsewhere." *See State v. Hernandez*, 1997-NMCA-006, ¶ 25, 122 N.M. 809, 932 P.2d 499 (internal quotation marks and citation omitted). The continued investigation was therefore supported by reasonable suspicion and justified to ensure Victim's safety. *See State v. Pierce*, 1990-NMSC-049, ¶ 15, 110 N.M. 76, 792 P.2d 408 (explaining that the government has an interest in "protecting the bodily integrity and personal safety of children").

**{12}** Victim's equivocation also contributes to our conclusion that the long investigation was diligent. The investigation moved forward slowly because Victim gave a false name and her identity could not be confirmed for nearly an hour. When law enforcement discovered the other pending cases, reasonable suspicion of criminal activity involving Victim and Defendant continued. In this situation, "the investigation require[d] awaiting the development of circumstances off the scene," *see State v.*

---

[1]The parties dispute when the no-contact order was discovered. The State maintains that the no-contact order was discovered around an hour into the encounter, and Defendant argues that the no-contact order was not discovered for three hours—not until right before transport to the police station. We need not resolve this dispute. The discovery of the no-contact order objectively provided probable cause to arrest Defendant. The length of time before the discovery of the no-contact order is not dispositive—but rather whether reasonable suspicion of wrongdoing was dispelled before or continued up until the no-contact order was discovered and probable cause developed.

*Werner*, 1994-NMSC-025, ¶ 20, 117 N.M. 315, 871 P.2d 971, to contact the other detective for more information on the other pending case. Reasonable suspicion, however, was not dispelled and supported law enforcement's ongoing investigation at the scene up until they developed probable cause that Defendant had violated the no-contact order. *See State v. Robbs*, 2006-NMCA-061, ¶ 25, 139 N.M. 569, 136 P.3d 570 (concluding that forty-minute detention was justified for officers to investigate when initial suspicions "were not dispelled"). The evidence presented therefore supports a conclusion that Defendant's continued detention was reasonable for law enforcement to continue to investigate the developing facts. *See Werner*, 1994-NMSC-025, ¶ 20 ("Diligence in the investigation is key.").

**{13}** The justification for the detention, which we have already explained, combined with the diligence of the investigation, outweighs the other two factors—Defendant's three-hour detention (length of detention) in the back of a police car (character of the intrusion). *See id.* ("[D]etention in a locked squad car does not in and of itself constitute an arrest during, for example, a radio search of a data base or completion of an investigation of facts immediately available at the scene of the detention."). The length of the detention takes on greater significance when the detention continues after law enforcement "had exhausted the means of investigation" to confirm or dispel their suspicions. *See State v. Jutte*, 1998-NMCA-150, ¶¶ 19-20, 126 N.M. 244, 968 P.2d 334 (involving a one-hour detention); *see also Hernandez*, 1997-NMCA-006, ¶ 22 (finding a detention ripened into a de facto arrest when the defendant was made to wait for a female officer to perform a search after searches of her car failed to turn up any contraband). For example, in *State v. Flores*, police pulled over three vehicles, one containing the defendant, based on a tip that the vehicles were carrying marijuana. 1996-NMCA-059, ¶¶ 2-3, 122 N.M. 84, 920 P.2d 1038. After obtaining consent to search, the officers uncovered no drugs during a one-hour roadside search. *Id.* ¶¶ 3-4. Undeterred, officers moved the vehicles to a second location and searched all three vehicles again. *Id.* ¶¶ 12-13. The defendant was detained while handcuffed for several hours while police attempted to uncover evidence of drugs. *Id.* ¶ 4. This Court held that "[o]nce the officers failed to uncover any drugs at the roadside stop, the very rationale for the stop . . . was exhausted," and that "the police had no choice but to let [the d]efendant go." *Id.* ¶ 13 (citation omitted). The Court reasoned that the detention ripened into a de facto arrest because officers had dispelled their initial suspicions once they failed to uncover evidence of drugs at the roadside detention yet they "simply held [the d]efendant in case probable cause was later developed," thereby turning the requirement for probable cause "upside down." *Id.* ¶¶ 13, 15 (alteration, internal quotation marks, and citation omitted). The present case is different, because law enforcement's suspicions were never dispelled after the initial encounter. Officers had reasonable suspicion to investigate the circumstances involving an older person and an unidentified partially-clothed minor in a field at night. When Victim was identified and the pending court cases and no-contact order were discovered as a result of the investigation, the reasonable suspicion that developed and persisted throughout the encounter developed into probable cause. "[T]aking into account duration and the other factors" and viewing the facts in the light most favorable to the prevailing party, the present case does not present circumstances in which the detention ripened into an

illegal de facto arrest without probable cause. *See Skippings*, 2014-NMCA-117, ¶ 25; *Flores*, 1996-NMCA-059, ¶ 15 (describing an "illegal, de facto arrest" as one without probable cause).

### 3.     The Search and Seizure of Defendant's Vehicle Was Not Unlawful

**{14}**     Defendant argues that the vehicle was unconstitutionally seized by a post-arrest tow and searched pursuant to an insufficient search warrant affidavit (the Affidavit), and as a result, law enforcement was able to collect the cellphone containing the media that formed the basis for the charges against Defendant.

### a.     The Vehicle Was Lawfully Seized

**{15}**     Defendant contends that the vehicle was "unlawfully seized" when it was towed before any warrant was issued because "New Mexico has rejected the automobile exception" to the search warrant requirement. Law enforcement, however, may exercise control over a defendant's property based on a balance of three factors, which in the present case weigh in favor of the seizure. *See State v. Ontiveros*, 2022-NMCA-019, ¶¶ 13-15, 508 P.3d 910 (establishing the three criteria). First, a reasonable nexus existed between Defendant's arrest and the seizure of the vehicle, because Defendant was found with Victim inside the vehicle the night of his arrest. *See id.* ¶ 13 ("If a defendant possesses an object at the time of an arrest, then a reasonable nexus exists between the arrest and the seizure . . . of the object." (alteration, internal quotation marks, and citation omitted)). Second, the vehicle was "made unsecure by the arrest" because it would have been left in the middle of a field on public property. *Cf. id.* ¶ 14 (concluding the defendant's vehicle was not made unsecure by an arrest because the vehicle was parked at his grandmother's trailer). Third, given the location, if left out in the field, the vehicle may have been "lost, stolen, or destroyed and the police potentially held liable." *See id.* (internal quotation marks and citation omitted). For these reasons, we conclude that law enforcement permissibly towed Defendant's vehicle following his arrest.

### b.     The Affidavit Was Facially Valid and an Evidentiary Hearing Was Not Required

**{16}**     After Defendant's vehicle was towed, Detective Valderaz—who was on-call the night of the incident and who responded to the scene after being contacted about the other pending case—prepared the Affidavit in support of a warrant to search the vehicle. In the Affidavit, Detective Valderaz included information provided by Deputy Whitzel. Defendant contends that the Affidavit was invalid on its face and the search of the vehicle was therefore unconstitutional, and that the district court should have permitted an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) in order to permit Defendant to test the veracity of the statements in the Affidavit.

**{17}**     A warrant affidavit "must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause." *State v.*

*Williamson*, 2009-NMSC-039, ¶ 30, 146 N.M. 488, 212 P.3d 376 (internal quotation marks and citation omitted). As a reviewing court, we "must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* ¶ 29. A defendant may obtain an evidentiary hearing to challenge "alleged falsehoods and omissions in a search warrant affidavit" by making an offer of proof of "either deliberate falsehood, or reckless disregard for the truth, as to a material fact." *State v. Fernandez*, 1999-NMCA-128, ¶¶ 31-34, 128 N.M. 111, 990 P.2d 224 (internal quotation marks omitted). Defendant argues that the Affidavit did not establish probable cause because it (1) included hearsay, (2) did not identify the occupants of the vehicle by name, (3) did not establish a sufficient factual basis for criminal activity, and (4) did not set forth a nexus between the specific crimes listed and the collection of any cellphones from the vehicle. As we explain, we disagree with each argument.

**{18}**    First, hearsay may support probable cause "provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Rule 5-211(E) NMRA; *see State v. Cordova*, 1989-NMSC-083, ¶¶ 11, 17, 109 N.M. 211, 784 P.2d 30 (noting that Rule 5-211(E) codified the test from *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969)). Defendant contends that no such substantial basis exists to believe the hearsay from Deputy Whitzel that was included in the Affidavit about the identities of the occupants of the vehicle. But Deputy Whitzel's hearsay observations in the Affidavit met the standard of Rule 5-211(E). The source of the hearsay, a police officer at the scene, is a credible source of information. *See State v. Perea*, 1973-NMCA-123, ¶ 10, 85 N.M. 505, 513 P.2d 1287 ("Observations of fellow officers . . . engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." (internal quotation marks and citation omitted)). Further, the basis of knowledge for the information is clear in the Affidavit: Deputy Whitzel was on the scene with the occupants of the vehicle when they identified themselves. Based on these two conclusions, Deputy Whitzel's hearsay that Detective Valderaz included in the Affidavit satisfies the requirements of Rule 5-211(E).

**{19}**    Second, a commonsense reading of the Affidavit allows for the inference that the occupants of the vehicle were Defendant and Victim despite the Affidavit's failure to explicitly name either as a vehicle occupant. *See Williamson*, 2009-NMSC-039, ¶ 30 (explaining that if "the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." (alteration, internal quotation marks, and citations omitted)). The Affidavit asserts that on approaching the vehicle, Deputy Whitzel observed "two occupants" but the Affidavit does not identify either occupant by name. Two sentences later, the Affidavit states that Deputy Whitzel "learned through his investigation" that Defendant and Victim were involved in an "ongoing" district court case and that there was "a no contact order between [Victim] and [Defendant]." Defendant and Victim are both identified by name in these statements and in a

subsequent averment that Detective Valderaz conducted interviews with both Victim and Defendant after the arrest. Thus, the commonsense reading of the progression of facts asserted in the Affidavit supported a conclusion by the issuing court that the two individuals found in the vehicle at the scene were Defendant and Victim. *See State v. Donaldson*, 1983-NMCA-064, ¶ 13, 100 N.M. 111, 666 P.2d 1258 ("In determining probable cause, the court must interpret the affidavit in a common[]sense and realistic fashion and must not require technical requirements of elaborate specificity.").[2]

{20}     Third, the Affidavit established facts that enabled the issuing judge to find probable cause. "Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed in that place, or that evidence of a crime will be found there." *State v. Sabeerin*, 2014-NMCA-110, ¶ 8, 336 P.3d 990 (internal quotation marks and citation omitted). As we have explained, an affidavit supporting the issuance of a search warrant "must contain sufficient facts to enable the issuing judge independently to pass judgment on the existence of probable cause." *Id.* ¶ 9 (internal quotation marks and citation omitted). The affidavit "must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched," and must also assert a factual basis establishing "a sufficient nexus between . . . the criminal activity, and the . . . things to be seized, and . . . the place to be searched." *Id.* ¶ 10 (internal quotation marks and citations omitted). The Affidavit sufficiently satisfied these criteria.

{21}     The Affidavit in the present case described the circumstances of the traffic stop, including that Defendant was found with a minor female in a t-shirt and underwear; an ongoing district court case involved Defendant and Victim; and Defendant and Victim were to have no contact per court order. Further, the Affidavit states that Detective Valderaz interviewed Victim, who acknowledged that there were "at least two meetings" with Defendant and that "they were exchanging text messages for these meetings." The Affidavit continued, "based on the ongoing no[-]contact order and the text messages between [Defendant] and [Victim]." These facts are sufficient to establish probable cause of criminal activity—that Defendant violated the no-contact order. *See id.* ¶ 10. And because the two were found inside Defendant's vehicle, and any cellphones therein would likely contain evidence of Defendant's violation of the no-contact order, the probable cause established for the criminal activity was sufficiently tied to the things to be seized and the place to be searched. *See id.* Viewing the Affidavit in a commonsense, rather than a hypertechnical manner, we conclude that the Affidavit provided the issuing court with a substantial basis to find probable cause in support of the search warrant. *See id.* ¶¶ 23-24 (requiring the affidavit to provide sufficient facts upon which to conclude that there was a "reasonable probability" connecting criminal activity with the area to be searched).

---

2Because we have concluded that (1) the hearsay of Deputy Whitzel included in the Affidavit met the requirements of Rule 5-211(E); and (2) a commonsense reading of the Affidavit supported the inference that the two occupants of the vehicle were Defendant and Victim, we need not address Defendant's related argument that because the individuals in the vehicle were not identified, there was not a sufficient nexus between the no-contact order, the vehicle, and any cellphones found within.

**{22}** Fourth, the Affidavit additionally established probable cause to search for evidence of SEC in the vehicle. *See id.* ¶ 8 (explaining that probable cause exists "to search a specific location . . .when there are reasonable grounds to believe that . . . evidence of a crime will be found there" (internal quotation marks and citation omitted)). Defendant contends that the search warrant in this case only attempted to establish probable cause for violation of the no-contact order and then impermissibly requested a search for evidence of two entirely different crimes—SEC and bribery or intimidation of a witness. We disagree. The Affidavit alleges that a young female was found partially unclothed in a parked, running vehicle, lying next to an obviously older male. Another case restricted contact between the two and though Victim acknowledged that text messages had been exchanged, Victim declined to answer whether "she had sent any nude photographs of herself to [Defendant]." When Defendant and Victim were removed from the vehicle, a reasonable inference arose that any cellphones that were not found on their persons were left behind in the vehicle. Victim's disinclination to answer questions about nude photographs supports an inference that the cellphones—the things to be seized—that law enforcement reasonably inferred were located in the vehicle—the thing to be searched—contained evidence of SEC. *See* § 30-6A-3(A) (defining sexual exploitation of a child); *Sabeerin*, 2014-NMCA-110, ¶ 13 (explaining that in determining probable cause, "[a]ll direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, should be considered." (internal quotation marks and citation omitted)).

**{23}** Because we conclude that the Affidavit contains sufficient facts to support probable cause to investigate the vehicle, *see Williamson*, 2009-NMSC-039, ¶ 30, we consider Defendant's additional argument that the district court should have held a hearing to evaluate Defendant's contention that the Affidavit was nevertheless invalidated by material omissions, *see State v. Chavez*, 2023-NMCA-071, ¶ 42, 535 P.3d 736; *see also Fernandez*, 1999-NMCA-128, ¶ 31 (requiring for a *Franks* evidentiary hearing, a defendant to make a sufficient offer of proof that a warrant contains material omissions or deliberate falsehoods). Defendant argues that a *Franks* hearing was necessary based on Defendant's assertions in the district court that the Affidavit omitted exculpatory statements made by Victim during the police interview that followed Defendant's arrest, including that Victim was "in love with [Defendant] and he has never talked to her about not testifying or intimidating her as a witness." Defendant, however, identifies no evidence that the omissions were deliberate and in reckless disregard of the truth beyond the facial allegation that they were. And the specific omissions identified by Defendant, if true and established at a *Franks* hearing, would not have been material to probable cause of SEC or violation of the no-contact order. *See Donaldson*, 1983-NMCA-064, ¶ 17 (evaluating the materiality of any asserted falsehood based on whether, "had the information been set out or correctly stated in the affidavit, it would have altered a reasonable magistrate's determination of probable cause"). We therefore conclude that the district court appropriately denied Defendant's request for a *Franks* hearing. *See Fernandez*, 1999-NMCA-128, ¶ 31 (requiring, to justify a hearing, the defendant to make an offer of proof to "indicate that the affidavit contained *material* deliberate falsehoods or a reckless disregard for the truth" (internal quotation marks and citation omitted)).

**4.** **The District Court Did Not Abuse Its Discretion by Granting the State's Motion in Limine for Forfeiture by Wrongdoing**

**{24}** The State moved in limine to admit Victim's out-of-court statements based on its position that Defendant procured her absence from trial. The district court granted the motion and allowed the State to present some of Victim's out-of-court statements at trial. Defendant argues that his misconduct did not cause Victim's unavailability, and therefore the district court improperly admitted text messages between Defendant and Victim as well as Deputy Padilla's bodycam footage that shows Deputy Padilla having a conversation with Victim at the scene. This error, Defendant argues, resulted in a violation of the Confrontation Clause and a violation of the rules of evidence. *See State v. Farrington*, 2020-NMSC-022, ¶ 13, 476 P.3d 1231 (recognizing the forfeiture rule as "both an exception to confrontation rights and a codified evidentiary exception to the rule against hearsay" (emphasis omitted)). We first consider de novo whether any of the challenged statements implicate Defendant's constitutional right to confrontation, *see State v. Tsosie*, 2022-NMSC-017, ¶¶ 22-23, 516 P.3d 1116, and otherwise review the district court's ruling on a motion in limine for an abuse of discretion, *see State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829.

**{25}** "The United States Supreme Court has long held a [d]efendant's right to confrontation may be forfeited by his own wrongdoing . . . [because] the law will not allow a person to take advantage of his own wrong." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 8, 136 N.M. 309, 98 P.3d 699 (alteration, internal quotation marks, and citations omitted). The forfeiture exception that operates to waive a defendant's Sixth Amendment right to confrontation "applies only to testimonial hearsay." *Farrington*, 2020-NMSC-022, ¶ 30 (internal quotation marks and citation omitted); *see* U.S. Const. amend. VI. Statements are "'testimonial when the circumstances objectively indicate . . . that the primary purpose of the police interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" *Tsosie*, 2022-NMSC-017, ¶ 28 (emphasis omitted) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). Statements are nontestimonial when the primary purpose of questioning is to assist police in meeting an ongoing emergency, *id.*, however, the United States Supreme Court has acknowledged that "there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). To evaluate the primary purpose of any admitted statements, courts should "'objectively evaluat[e] the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs.'" *State v. Largo*, 2012-NMSC-015, ¶ 12, 278 P.3d 532 (quoting *Bryant*, 562 U.S. at 370). "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to create an out-of-court substitute for trial testimony." *Tsosie*, 2022-NMSC-017, ¶ 40 (internal quotation marks and citation omitted).

**{26}** Based on all of the circumstances, Victim's statements made in text messages and the bodycam video were not testimonial. We agree with the State that the "text messages exchanged privately between [Victim] and Defendant before Defendant was

charged in this case were plainly not solemn declarations, nor were they written to establish facts or past events relevant to a later prosecution." Victim's statements to Deputy Padilla at the scene, captured on Deputy Padilla's bodycam, were neither hearsay nor testimonial, and therefore do not implicate the Confrontation Clause. *See State v. Lea*, 2023-NMCA-061, ¶ 7, 535 P.3d 754 ("The Confrontation Clause is violated only if the testimonial statement is offered to prove the truth of the matters asserted." (alteration, internal quotation marks, and citation omitted)); *Smith v. Arizona*, 602 U.S. ___, ___, 144 S. Ct. 1785, 1792 (2024) (explaining that the Confrontation Clause "bars only the introduction of hearsay—meaning, out-of-court statements offered to prove the truth of the matter asserted" (internal quotation marks and citation omitted)).

**{27}**    Defendant has not pointed us to any specific statements on Deputy Padilla's recording that were offered at trial for their truth, and the primary purpose of the encounter was not to obtain out of court testimony. The statements elicited by Deputy Padilla from Victim—name, age, guardian contact information, and the circumstances at the vehicle—were necessary for police to evaluate the situation at hand. Deputy Padilla's intent was to determine whether Victim was in any present danger. Victim's statements and actions indicated an intent to prevent the police from contacting her grandmother and to deny any wrongdoing on the part of Defendant. After the initial questions, Victim indicated that she had a phone, asked Deputy Padilla not to call her grandmother because she was supposed to be in a class, and stated more than once that "nothing happened." As Defendant has repeatedly argued, Victim's statements themselves did not implicate wrongdoing by Defendant. It was law enforcement's other observations that seemingly contradicted Victim's statements that supported further investigation, and the video clip "explained the context for law enforcement's investigation." *See State v. Scott*, 2023-NMCA-031, ¶ 10, 528 P.3d 728 (addressing a situation in which the "information provided to law enforcement did not explicitly incriminate [the d]efendant as having *actually committed* the crime at issue—that is, distributing narcotics, but rather explained the context for law enforcement's investigation"). Nothing suggests that Victim "made the statement[s] primarily intending to establish some fact with the understanding that the statement[s] may be used in a criminal prosecution." *See id.* ¶ 6 (internal quotation marks and citation omitted).

**{28}**    Based on the obvious age difference between Defendant and Victim and the circumstances in which they were discovered, law enforcement needed to determine if Victim was at risk from Defendant in order to "to know whether it was safe to release" Victim in the company of Defendant. *See Tsosie*, 2022-NMSC-017, ¶ 41 (describing teachers' questions to a minor student in *Ohio v. Clark*, 576 U.S. 237, 246-49 (2015)). While the investigators in the present case were law enforcement, which is "highly relevant to the Sixth Amendment analysis," the challenged statements by Victim on the bodycam recording did not implicate Defendant in a crime. Considering the circumstances of the entire encounter, we conclude that Victim's statements captured on the bodycam footage were not testimonial. *See Tsosie*, 2022-NMSC-017, ¶¶ 39-42. Our review of the admission of Victim's statements is therefore not constitutional. *See Farrington*, 2020-NMSC-022, ¶ 30.

**{29}** Instead, we analyze the district court's admission of Victim's out-of-court statements under Rule 11-804 NMRA for abuse of discretion. *See id.* ¶ 33. Rule 11-804 sets forth an exception to the hearsay rule based on the declarant's unavailability. Under Rule 11-804(A)(5), a declarant is "unavailable" if the proponent of the declarant's testimony demonstrates an inability "by process or any other reasonable means, to procure" the declarant's attendance. If a declarant is unavailable, Rule 11-804(B)(5) permits the introduction of the declarant's hearsay if it is "[a] statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Defendant argues the State did not satisfy either Rule 11-804 requirement.

**{30}** Although Defendant contends that the "State did not make a good-faith[] effort to procure [Victim's] attendance for trial" under Rule 11-804(A), seven months before trial, Defendant conceded at the pretrial hearing on the State's motion that Victim was unavailable to testify at trial after the State put on evidence showing its unsuccessful efforts to locate Victim. The district court found that Defendant conceded Victim's unavailability. Immediately before trial, Defendant raised the matter again and the district court ruled that "unless [D]efendant can show that perhaps circumstances have changed," there was no reason to reconsider the earlier ruling. On appeal, Defendant identifies no circumstances that had changed in the months between the hearing and the start of trial that would undermine the concession that Victim was unavailable. We therefore consider the argument no further and turn to the Rule 11-804(B)(5) hearsay exception.

**{31}** In order for the forfeiture exception set forth in Rule 11-804(B)(5) to apply, four conditions must be established—but Defendant challenges only the third, whether misconduct caused Victim's unavailability. *See Farrington*, 2020-NMSC-022, ¶ 23 (outlining the factors). Defendant denies engaging in any misconduct or taking any action to cause Victim's unavailability, and maintains that Victim's absence was in part because Victim had "disdain" for the prosecution. The district court, however, concluded that Defendant's coercion caused Victim not to testify and a preponderance of the evidence supports that conclusion. *See id.* ¶ 35 (explaining that the district court evaluates the forfeiture exception "through the lens of Rule 11-104(A) NMRA," which requires the district court to "address preliminary questions about admissibility" and be satisfied "by a preponderance of the evidence that the foundational requirement has been met" (internal quotation marks and citation omitted)). In relation to another pending case, Defendant texted to Victim, "I don't want to go to trial on the 4th if you are going to testify." Also regarding the other case, Defendant repeatedly asked Victim if she would break under questioning and asked what she would do if police put her in jail; assured Victim several times that the charges would be dismissed if she refused to testify; encouraged Victim to lie to the prosecution about her reasons for not testifying; and again asked for reassurance about Victim's promised refusal. The messages from Defendant were plainly intended to "silence testimony and impede the truth-seeking function of trial." *See State v. Maestas*, 2018-NMSC-010, ¶ 32, 412 P.3d 79. Even though Defendant did not instruct or demand that Victim not testify in the present case, "wrongdoing, for purposes of application of the forfeiture exception, need not take the

form of overt threat of harm" and "various forms of coercion, persuasion, and control may satisfy the requirement." *See id.* ¶¶ 2, 34, 46. The text evidence supported the district court's conclusion that Defendant coerced, persuaded, and controlled the teenaged Victim and that Defendant "intended to cause, and did cause" Victim's unavailability. *Id.* ¶ 46.

**{32}** Defendant resists this conclusion based on a view that Victim was still cooperating with the State for at least six months following the text conversation relayed above and because the district court received evidence that Victim did not come to trial because of a seizure disorder. Victim explained to Defendant, however, that even though her grandmother would make her appear in court for the other case, she would refuse to answer any questions. Following the dates of the text messages, the State represented in writing and at a hearing that Victim would cooperate and Victim came to court but was not called to the stand and provided no testimony. The district court's ruling on forfeiture-by-wrongdoing "will be disturbed on appeal only when the facts and circumstances of the case do not support its logic and effect." *See State v. Martinez*, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894 (alteration, internal quotation marks, and citation omitted). The facts and circumstances support a conclusion that Victim's earlier words in response to Defendant's entreaties through texts more effectively demonstrated Victim's intent than either the State's representations about Victim's intentions that never came to fruition or Victim's grandmother's representation that Victim did not want to testify because of a seizure disorder. That evidence therefore supports the district court's determination on this issue by a preponderance of the evidence, *see Farrington*, 2020-NMSC-022, ¶ 35, and we otherwise decline to disturb that ruling.

## II.     The Trial Challenges

**{33}** Defendant also contests multiple aspects of the trial testimony of Lieutenant Perham and the sufficiency of the evidence to support the verdict. We address each in turn.

## A.     Lieutenant Perham's Testimony Was Admissible

**{34}** Defendant challenges the testimony of Lieutenant Perham in three respects. Defendant argues: (1) Lieutenant Perham's testimony should have been excluded because the State did not make a timely expert disclosure; (2) the identification of Victim by Lieutenant Perham invaded the province of the jury; and (3) Lieutenant Perham lacked personal knowledge about the phones and chain of custody, resulting in a violation of the right to confrontation. To put the arguments in context, we review the relevant aspects of his trial testimony.

**{35}** The State began Lieutenant Perham's testimony on the first day of trial. Lieutenant Perham was not initially offered as an expert but testified about his training and background investigating child sexual exploitation. When Lieutenant Perham identified Victim as the person in the media found on the cellphones and testified to her

approximate age, Defendant objected based on speculation and because Lieutenant Perham was not a medical expert. Importantly, the media exhibits showed only a nude body and not the face of the individual depicted. The district court permitted Lieutenant Perham to continue, but after a few more minutes of testimony, the district court excused the jurors for the day to further discuss with the parties Lieutenant Perham's role as a witness.

**{36}** After the jury left, the district court permitted Defendant to expand on the objection made to Lieutenant Perham's testimony. Defendant argued that Lieutenant Perham had not been noticed as an expert and any testimony identifying the individual in the media as a minor would need to come from a medical expert. The district court determined that any opinion testimony about the age of the individual in the media would fall within lay testimony, but regarding Lieutenant Perham's opinion that the individual in the video and photographs was Victim, the court allowed Defendant to voir dire the witness.

**{37}** Lieutenant Perham testified that he had met Victim in person, and although he had not seen her nude before, he had seen many other photographs of her, and could compare her size and frame to the individual depicted in the media. The State then handed Lieutenant Perham several photographs of Victim to confirm that he could make the identification. Ultimately, the district court determined that additional foundation would be required for Lieutenant Perham to identify Victim as the individual portrayed in the video and photographs. The next day at trial, despite the district court's ruling that Lieutenant Perham's testimony was lay opinion, the State laid a foundation for Lieutenant Perham's training and experience in child exploitation investigations and data extraction, processing, and analysis. The district court qualified Lieutenant Perham as an expert in those fields and overruled Defendant's objection that the State did not give appropriate notice of the intent to call Lieutenant Perham as an expert. The State also offered additional foundation for Lieutenant Perham to identify Victim in the media, which the district court permitted over Defendant's objection. With this context in mind we consider each of Defendant's challenges to the testimony of the Lieutenant.

1. **The District Court Did Not Abuse Its Discretion by Admitting the Expert Testimony of Lieutenant Perham Despite the Late Disclosure**

**{38}** To decide "whether late disclosure of evidence requires reversal" and constituted an abuse of discretion, we consider the following factors: "(1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *See State v. Duarte*, 2007-NMCA-012, ¶¶ 12, 15, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted). On appeal, "Defendant has the burden of showing that he was prejudiced by the untimely disclosure." *See id.* ¶ 15 (internal quotation marks and citation omitted). The State concedes it violated a disclosure duty under Rule 5-501(A)(5) NMRA, we accept that

concession, and this factor weighs in favor of error. We therefore turn our attention to the materiality, prejudice, and curative factors.

{39}     The late disclosure of Lieutenant Perham's status as an expert was neither material nor prejudicial, and the district court cured the untimely disclosure. As of the January 13, 2022 hearing, Defendant was aware that Lieutenant Perham participated in the seizure and extraction of data from the cellphones and that the State intended to use law enforcement testimony to prove Victim's identity. The district court permitted Defendant to interview Lieutenant Perham and that interview occurred before trial. Before the district court qualified Lieutenant Perham as an expert, Defendant further conducted voir dire of Lieutenant Perham about the identity and age opinions. At trial, Defendant thoroughly tested Lieutenant Perham's opinions on cross-examination. For these reasons, Defendant does not meet the burden to demonstrate that Lieutenant Perham's testimony as an expert, rather than a lay witness, was material. *See McDaniel*, 2004-NMCA-022, ¶ 13 (defining materiality as "whether the outcome of the trial would have been different if the witness had been disclosed earlier"). Nor does Defendant establish prejudice. *See Duarte*, 2007-NMCA-012, ¶ 15 (explaining the test for prejudice as "whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial" (alteration, internal quotation marks, and citation omitted)). Defendant does not explain how he would have prepared differently had he known that Lieutenant Perham would testify as an expert, particularly because the district court permitted Defendant to voir dire Lieutenant Perham outside the presence of the jury before permitting Lieutenant Perham to give expert testimony. *See State v. Vallejos*, 2000-NMCA-075, ¶¶ 33-34, 129 N.M. 424, 9 P.3d 668 (discerning no abuse of discretion to admit a late-disclosed witness when the district court ordered the witness to be made available for interview). We therefore conclude that Defendant has not met the burden on appeal to demonstrate that the district court abused its discretion when it admitted Lieutenant Perham's expert testimony at trial. *See Duarte*, 2007-NMCA-012, ¶ 15.

**2.     The District Court Did Not Abuse Its Discretion by Permitting Lieutenant Perham to Identify Victim**

{40}     Next, Defendant argues that the district court abused its discretion when it allowed Lieutenant Perham "to identify [Victim] as the person in the video and pictures." *See Rojo*, 1999-NMSC-001, ¶ 41. The New Mexico Rules of Evidence "restrict admissible opinion testimony—from lay witnesses and experts alike—to opinions that benefit the fact-finder's understanding or help the fact-finder determine a fact in issue." *State v. Chavez*, 2022-NMCA-007, ¶ 41, 504 P.3d 541; *see* Rule 11-701(B) NMRA; Rule 11-702 NMRA. This Court has adopted five factors to consider when determining whether a witness is more likely than the jury to identify an individual in a video or photograph. *See Chavez*, 2022-NMCA-007, ¶ 41 (noting that the factors apply to lay witness identifications of "a person"); *see also State v. Stalter*, 2023-NMCA-054, ¶ 28, 534 P.3d 989 (remarking that the factors apply to video and photographic evidence). These factors include

(1) the witness's general level of familiarity with the [individual's] appearance; (2) the witness's familiarity with the [individual's] appearance at the time the surveillance photograph was taken or whether the [individual] was dressed in a manner similar to the individual depicted; (3) whether the [individual] disguised [their] appearance at the time of the offense; (4) whether the [individual] had altered [their] appearance prior to trial; and (5) the degree of clarity of the surveillance recording and the quality and completeness of the subject's depiction in the recording.

*State v. Sweat*, 2017-NMCA-069, ¶ 22, 404 P.3d 20 (internal quotation marks and citation omitted) (applying the factors to the lay witness identification of a defendant); *see also Chavez*, 2022-NMCA-007, ¶ 41 (concluding that the factors apply to people and objects appearing in video recordings).

**{41}** These factors weigh in favor of Lieutenant Perham's testimony. Regarding the first two factors, Lieutenant Perham testified that he first met Victim in person in 2017 and had "spoken to or been in her presence maybe six times," and these meetings occurred fairly close in time to the 2018 charges against Defendant. In relation to the third and fifth factors, the photos did not include the individual's face making it more difficult for the jury to identify the individual, though the body was clearly depicted. Because Victim did not appear at trial, the fourth factor is not relevant. Based on these factors, Lieutenant Perham was more familiar with Victim's appearance than the jury, and his opinion that Victim was the individual portrayed in the media was therefore helpful to the jury as required by Rules 11-701 and 11-702. Thus, we conclude that the district court did not abuse its discretion in allowing Lieutenant Perham to identify Victim in the video and photographs at issue.

### 3. The Unavailability of Detective Valderaz Did Not Undermine the Foundation for the Media Evidence

**{42}** Defendant additionally argues that Lieutenant Perham's testimony could not properly substitute for the testimony of Detective Valderaz, who died before trial, to establish the requisite foundation or to satisfy the Sixth Amendment right to confrontation. *See* U.S. Const. amend. VI. Again, we review claimed constitutional violations de novo and the admission of evidence for abuse of discretion. *See State v. Huettl*, 2013-NMCA-038, ¶ 16, 305 P.3d 956 (stating standard of review for confrontation violations); *Rojo*, 1999-NMSC-001, ¶ 41 (stating standard of review for admission of evidence).

**{43}** Both Detective Valderaz and Lieutenant Perham were involved with the investigation of this case beginning on the night the vehicle was discovered in the field. Detective Valderaz went to the scene the night of the incident and Lieutenant Perham was briefed by phone on the situation. Lieutenant Perham arrived the following morning to participate in the search of the seized vehicle. Detective Valderaz and Lieutenant Perham participated in executing the search warrant on Defendant's vehicle. Though Lieutenant Perham was present for the search of the vehicle and the seizure and

photographing of the cellphones, Detective Valderaz collected the physical evidence from the vehicle, filled out the evidence tags, and took the evidence to be further secured. Lieutenant Perham did not accompany Detective Valderaz and the evidence to the storage locker. At trial, Lieutenant Perham testified generally about the procedures involved in the execution of a search warrant and the collection of evidence, and then described his own experience participating in some of those procedures in the present case.

**{44}**    Defendant claims that he had a constitutional right to cross-examine Detective Valderaz—whom Defendant describes as the officer that "actually collected the evidence"—about "where he allegedly collected the cellular phones from, his collection and handling of them, the dates they were collected, and the procedures used to ensure the evidentiary chain of custody." On appeal, Defendant only challenges the chain of custody testimony following the seizure of the cellphone—what happened to the phone after Lieutenant Perham's involvement. Defendant compares the present case to *State v. Carmona*, 2016-NMCA-050, 371 P.3d 1056, in which an expert relied on a report from a deceased nurse who conducted an examination and collected evidence. *Id.* ¶¶ 2-4. Because the testifying expert was not present for the exam and relied on the other nurse's report to opine that the evidence collected came from the victim, *id.* ¶¶ 37-40, this Court held that the admission of the expert's testimony violated the defendant's right to confrontation, *id.* ¶ 42. In the present case, however, Lieutenant Perham was present for the search of Defendant's vehicle and observed the photographs being taken and the cellphones being collected. He did not merely rely on Detective Valderaz's statements that the evidence came from Defendant's vehicle—he actually observed the phone being collected.

**{45}**    Defendant maintains that Lieutenant Perham's incomplete memory of the search demonstrated that he relied on hearsay from Detective Valderaz—in the form of Detective Valderaz's signatures on evidence bags—to testify that the chain of custody was complete. Defendant's argument appears to be that the State introduced improper "basis evidence." *See State v. Jimenez*, 2017-NMCA-039, ¶ 12, 392 P.3d 668 (alteration, internal quotation marks, and citation omitted). "'Basis evidence,' which includes out-of-court-statements that form the basis for a testifying witness's conclusion, whether expert or lay, is testimonial and therefore must be subjected to Confrontation Clause scrutiny." *Id.* (alteration, internal quotation marks, and citation omitted). The defendant in *Jimenez* wanted to "confront the additional officers who conducted the search of his car" to "explore a speculative theory" about evidence planting or contamination. *Id.* ¶ 18. But perceived deficiencies in the testimony of a witness with personal knowledge go to the weight of the evidence and not its admissibility. *See id.* So too Lieutenant Perham's incomplete memory and the absence of Detective Valderaz's testimony regarding his role in physically tagging the evidence after it was collected "went to the weight of the evidence not to the admissibility of it." *See Huettl*, 2013-NMCA-038, ¶ 31. Lieutenant Perham testified based on his personal knowledge of the search of the vehicle and seizure of the cellphone from Defendant's vehicle, without reference to any statement by the absent Detective Valderaz, and Defendant thoroughly cross-examined Lieutenant Perham about the personal knowledge supporting

Lieutenant Perham's testimony. *See Jimenez*, 2017-NMCA-039, ¶ 12. ("[W]here a witness testifies from personal knowledge and neither makes a statement nor draws a conclusion that is based on hearsay, the Confrontation Clause is not implicated at all."). As a result, "Defendant's Sixth Amendment right to confront the witnesses against him was not violated because no witness's testimony included testimonial hearsay." *See id.* ¶ 21.

**{46}** Defendant's remaining foundational arguments do not persuade us that the district court otherwise abused its discretion by admitting evidence without proof of chain of custody, because the evidence was "shown by a preponderance of the evidence to be what it purports to be." *See id.* ¶ 18 (internal quotation marks and citation omitted). Though Lieutenant Perham did not collect the cellphone himself, his presence for the search of Defendant's vehicle and seizure of the cellphone established his personal knowledge of the cellphone that was seized and permitted him to identify the cellphone visually and provide the appropriate foundation for its admission. *See* Rule 11-602 NMRA; *see also State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.3d 896 ("In order to admit real or demonstrative evidence, the evidence must be identified either visually or by establishing custody of the object from the time of seizure to the time it is offered into evidence."). The district court therefore did not abuse its discretion in admitting Lieutenant Perham's testimony about the cellphone.

## B.    The Evidence Supported Defendant's Convictions for SEC (Recording)

**{47}** Defendant also challenges the sufficiency of the State's evidence to establish that he committed SEC, contrary to Section 30-6A-3(D)—the recording convictions. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We will "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). Contrary evidence supporting a different result "does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Id.* (internal quotation marks and citation omitted). For our review, the "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. The jury was instructed, in relevant part, that the State had to prove beyond a reasonable doubt that

1.    [D]efendant caused or permitted [Victim] to engage in any prohibited sexual act or simulation of such an act . . . ;

. . . .

3. [D]efendant knew or had reason to know or intended that the prohibited sexual act or simulation thereof may be recorded in any obscene visual or print medium;

4. [Victim] was under 18 years of age.

Defendant challenges the evidence supporting each of these three elements.

{48}     Defendant argues that the State did not prove elements one and three because he did not specifically request nude or sexual pictures or ask for a sexual video, he did not cause or permit Victim to engage in a prohibited sexual act, and he did not intend that it be recorded. We disagree. At trial, the State's expert in the field of "mobile phone forensics" testified that Defendant's and Victim's phones contained thousands of text messages exchanged between Defendant and Victim including sexually explicit messages. Specifically, the expert described a text message conversation where Defendant asked Victim, "Can you send pics?" to which Victim replied, "Hehe yes my loves," and Defendant clarified, "Ass bent over?" Immediately following Defendant's request, Victim sent the two photographs at issue in this case and responded, "These work?" Defendant's response to the photos demonstrates that he received the pictures that he had intended for Victim to take—he replied, "I absolutely love your body!!!!" Several days later, Defendant sent Victim a text asking, "Are you pleasuring yourself?" and Victim responded, "Hehe I sure am." Defendant replied, "I want to see," and Victim then sent the video at issue in this case. Defendant's response to the video was again positive. Based on the timing and reasonable inferences gleaned from the above text conversations and viewing the evidence in the light most favorable to the verdict, we conclude that the State presented sufficient evidence for the jury to find that Defendant caused or permitted Victim to engage in a prohibited sexual act and that Defendant knew, had reason to know, or intended that the prohibited sexual act may be recorded. *See* § 30-6A-3(D); *Montoya*, 2015-NMSC-010, ¶ 52.

{49}     Defendant also challenges the evidence supporting the age element and argues that "the State failed to prove that the image was that of a child." On the second day of trial, Lieutenant Perham described the photos at issue in this case, including a photo taken in a bathroom, and opined that based on his training and experience the individual depicted therein was under the age of eighteen. Also at trial, Victim's grandmother testified that Victim was sixteen years old in 2018, when the previously described text conversations occurred. Victim's grandmother also identified Victim in several photos and gave testimony describing several photos of the house—including the bathroom—that she lived in with Victim at the time the media was created. During the State's closing argument, counsel invited the jury to compare the background of the photographs at issue in this case to the photographs of Victim's bathroom at home authenticated by Victim's grandmother. We conclude that substantial evidence supported the jury's verdict finding that the individual portrayed in the photographs and video was under the age of eighteen.

III.     Cumulative Error

**{50}** Finally, Defendant argues that because "there were substantial errors through[]out this case, the doctrine of cumulative error requires reversal." We have concluded no error occurred, and "[w]here there is no error to accumulate, there can be no cumulative error." *See State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (alteration, internal quotation marks, and citation omitted).

**CONCLUSION**

**{51}** We affirm.

**{52} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**GERALD E. BACA, Judge**